MICHAEL POLSKY, Plaintiff-Appellant and Cross-Appellee, v. BDO SEIDMAN *et al.*, Defendants-Appellees and Cross-Appellants.

Second District   No. 2—96—1108

Opinion filed December 17, 1997.

Robert S. Baizer and Joseph E. Kolar, both of Baizer & Kolar, P.C., of Highland Park, for appellant.

Gary L. Prior and Alan S. Rutkoff, both of McDermott, Will & Emery, of Chicago, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Michael Polsky, appeals from a series of trial court orders that dismissed his first amended complaint; granted a motion for sanctions against him; denied his motion for reconsideration; and awarded fees and costs against him. Defendants, BDO Seidman (BDO), Richard Krieberg (Krieberg), and Leland Graul (Graul), cross-appeal from the order awarding fees and costs.

On August 2, 1995, plaintiff filed a complaint against defendants in the circuit court of Lake County. A subsequent first amended complaint (the amended complaint) identified BDO as an accounting firm and Krieberg and Graul as BDO partners. The amended complaint alleged that defendants conspired with plaintiff's former employer, Indeck Energy Services, Inc. (Indeck), to defraud plaintiff of salary, bonuses, and the fair market value of Indeck stock owned by plaintiff in violation of written employment and shareholder agreements between plaintiff and Indeck. The amended complaint sought compensatory damages in excess of $25 million and punitive damages in excess of $25 million.

The amended complaint contained four counts. The four counts were based on theories of tortious interference with contractual relations; tortious interference with prospective economic advantage; fraud; and conspiracy to defraud plaintiff of the economic benefits of his employment and shareholder agreements.

We summarize the facts as taken from the amended complaint. Indeck terminated plaintiff on September 21, 1990. The termination was pursuant to a clause in plaintiff's written employment agreement with Indeck. The employment agreement allowed Indeck to terminate plaintiff if Indeck's net worth, as of June 1, 1990, was less than -$500,000. The termination was allegedly wrongful because Indeck actually had a net worth far greater than -$500,000 on that date.

The amended complaint further alleged that defendants precipitated plaintiff's wrongful termination by certifying financial statements for Indeck as of May 31, 1990, and November 30, 1990; the financial statements improperly deferred a $16 million gain realized by Indeck on March 16, 1990, and an $11.3 million gain realized by Indeck on June 23, 1990; defendants knew that the sole reason Indeck wanted to defer these gains was so the financial statements would show a net worth for Indeck of less than -$500,000 thereby allowing plaintiff's termination; defendants' legal and professional obligations as auditors required the recognition of the gains at the time they were received; such recognition would have resulted in a positive net worth on the financial statements; and, but for the

financial statements, Indeck would have had no grounds to terminate plaintiff.

The amended complaint further alleged that on September 21, 1990, pursuant to his employment agreement, plaintiff initiated an arbitration claim; during a hearing in the arbitration proceeding, Indeck relied on the May 31, 1990, financial statement prepared by BDO to attempt to show that Indeck had a net worth of less than -$500,000 on the audit date and that plaintiff's termination was therefore proper; Krieberg and Graul, who had prepared the financial statement, testified at the arbitration hearing in support of the financial statement; on November 27, 1991, the arbitrator determined that Indeck had wrongfully terminated plaintiff; the arbitrator awarded plaintiff $6,638,000 for lost salary and incentive compensation with interest of 10% per annum effective January 31, 1991; the arbitrator also awarded plaintiff $15,030,000 for the value of his Indeck stock; on February 20, 1992, the circuit court of Cook County confirmed the arbitrator's award for salary and incentive compensation, but vacated the award for the stock; and on February 28, 1992, Indeck paid plaintiff $7,301,005.80 pursuant to the arbitration award.

The amended complaint also alleged that plaintiff subsequently filed an action in the circuit court of Lake County (Lake County I) seeking to recover the value of his Indeck stock; the action was against Indeck, Indeck's chairman of the board, and others, but not the defendants in this case; and on May 10, 1994, plaintiff and the other parties in Lake County I settled all of their disputes by entering into a settlement and release agreement which contained release provisions (the release).

Defendants responded to plaintiff's amended complaint by filing a motion to dismiss the complaint. Defendants asserted, *inter alia*, that plaintiff's action was barred by the two-year statute of limitations set out in section 13—214.2(a) of the Code of Civil Procedure (Code) (735 ILCS 5/13—214.2(a) (West 1996)) and by the release.

On February 14, 1996, the trial court entered an order dismissing plaintiff's first amended complaint with prejudice. The order was based on the statute of limitations and the release.

Defendants then filed a motion for sanctions pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137). The motion sought an order requiring plaintiff to pay defendants for their attorney fees and costs.

On May 22, 1996, the trial court entered an order granting defendants' motion for sanctions. On June 12, 1996, the trial court entered an order which slightly amended the reasoning set out in the May 22, 1996, order. The amended order stated, in relevant part:

"Supreme Court Rule 137 requires that this Court set forth

with specificity the reasons and basis of any sanction imposed. The Court's specific reasons are as follows:

1. Plaintiff filed this action over 5 years after he received notice of his termination by Indeck, allegedly caused by the accountant defendants. This is 3 years plus after the two year statute of limitation applicable to accountants had expired. Plaintiff's research found no basis for a good faith belief that his claim was not barred by the statute of limitations in 735 ILCS 13—214.2(a).

2. In exchange for the receipt of a very large sum of money, plaintiff signed a broad release. The terms of the release extended to Indeck's 'agents,' 'affiliates of any kind,' and to 'any person acting on [Indeck's] behalf... .' By its terms, the release clearly encompassed defendants, who were alleged by plaintiff to have acted on Indeck's behalf and as its agents.

3. In dismissing this action, I found that Polsky's claim was barred by the statue [sic] of limitations and the release, as set forth above. This Court did not find it necessary to reach the other grounds raised by defendants. Because plaintiff's claim was clearly barred by the statute of limitations and release, and plaintiff's explanations for filing his action in the face of the statute of limitations and release provide no good faith basis for believing the action was well grounded in fact or law, this Court finds that defendants are entitled to an award of sanctions in the amount of their fees, costs and expenses caused by the filing of this action by plaintiff. I find that plaintiff's action in filing this suit was an egregious violation of Rule 137."

On June 12, 1996, the date that the trial court entered the amended order, plaintiff motioned for reconsideration. Plaintiff sought an order vacating the trial court's ruling insofar as it was based on the release. On July 24, 1996, the trial court entered an order which denied plaintiff's motion for reconsideration.

On August 22, 1996, the trial court entered an order awarding fees and expenses to defendants. The order awarded fees in the amount of $100,000 and expenses in the amount of $4,047.11. The order contained language allowing an immediate appeal.

On September 19, 1996, plaintiff filed a notice of appeal from the trial court orders entered on February 14, 1996; May 22, 1996; June 12, 1996; July 24, 1996; and August 22, 1996. On September 27, 1996, defendants filed a notice of cross-appeal from the trial court order entered on August 22, 1996.

■ Initially, we briefly address a motion that was taken with the case. On April 18, 1997, plaintiff filed a motion with this court seeking to strike parts of defendants' cross-appeal reply brief. Plaintiff alleged that defendants violated Supreme Court Rule 341(g) (155 Ill. 2d R. 341(g)) in their cross-appeal reply brief.

Rule 341(g) states:

> "The reply brief, if any, shall be confined strictly to replying to arguments presented in the brief of the appellee and need contain only Argument." 155 Ill. 2d R. 341(g).

Plaintiff contends that certain sections of defendants' cross-appeal reply brief violated Rule 341(g) because they were not strictly confined to replying to arguments presented by plaintiff in his cross-appeal brief.

We have carefully reviewed the briefs in question and have determined that plaintiff's motion is without merit. Plaintiff's cross-appeal brief incorporated all the arguments plaintiff previously made in his reply brief and plaintiff thereby broadened the arguments in his cross-appeal brief to which defendants could properly reply. Accordingly, plaintiff's motion to strike defendants' cross-appeal reply brief is denied.

■ We now turn to the merits of plaintiff's appeal and defendants' cross-appeal. The parts of defendants' motion to dismiss that the trial court relied on in reaching its decision to dismiss plaintiff's amended complaint were filed pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West 1996)). The purpose of a motion to dismiss under section 2—619 is to dispose of issues of law and easily proved questions of fact at the outset of a case. *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). A reviewing court determines the propriety of the dismissal *de novo*. *Goran v. Glieberman*, 276 Ill. App. 3d 590, 592 (1995). The question on appeal is whether a genuine issue of material fact exists and, if not, whether the defendant is entitled to judgment as a matter of law. *Wright v. City of Danville*, 174 Ill. 2d 391, 398-99 (1996).

■ Plaintiff first contends that the trial court erred when it ruled that the release discharged defendants. In the release, plaintiff discharged Indeck, Indeck's chairman of the board, other named companies and individuals, and "each of its or their officers, directors, shareholders, agents, employees, attorneys and any person acting on its or their behalf, from any and all claims" arising from the settled litigation. The release did not specifically name any of the defendants in this case. The trial court determined that the release encompassed defendants because they were Indeck's agents and/or had acted on Indeck's behalf.

Plaintiff contends that the trial court's ruling was erroneous because (1) *Alsup v. Firestone Tire & Rubber Co.*, 101 Ill. 2d 196 (1984), and *Brady v. Prairie Material Sales, Inc.*, 190 Ill. App. 3d 571 (1989), are the controlling cases and these cases require that, to be effective, a release must specifically name or otherwise specifically identify

those to whom it applies, and the release in this case did not name or specifically identify defendants; (2) even if a term in the release such as the term "agents" was deemed to be a term of specific identification, no term in the release applied to defendants; and (3) plaintiff did not intend to release defendants.

Defendants respond that the trial court correctly ruled that the release discharged them because (1) under *Cummings v. Beaton & Associates, Inc.*, 249 Ill. App. 3d 287 (1992), the term "agents" is a term of specific identification sufficient to render a release effective; (2) defendants were Indeck's agents and the release therefore specifically identified them and released them; and (3) plaintiff's intent regarding whom the release applied to should be determined from the unambiguous language of the release, which shows that it applied to defendants.

In *Alsup*, the plaintiffs were passengers in a car who were injured in a two-car accident. The plaintiffs settled with the driver of the other car for the limit of his insurance and executed releases in favor of the other driver and his parents. The releases discharged "Payer, and all other persons, firms, and corporations, both known and unknown, of and from any and all claims." *Alsup*, 101 Ill. 2d at 198.

The plaintiffs in *Alsup* subsequently filed a products liability action against Firestone, the manufacturer of a tire that had blown out on the other car. The trial court in the products liability case certified a question for appeal as to whether the releases applied to discharge Firestone where the plaintiffs believed no cause of action existed against Firestone at the time they signed the releases, and where the plaintiffs attached affidavits that they did not intend to release Firestone. *Alsup*, 101 Ill. 2d at 198.

In answering the certified question, our supreme court construed section 2(c) of the Contribution Among Joint Tortfeasors Act (Act) which stated, in relevant part, that a release given in good faith did not discharge other tortfeasors "unless its terms so provide" (Ill. Rev. Stat. 1979, ch. 70, par. 302(c)). The court determined that the legislature intended section 2(c) of the Act to limit the discharge of other tortfeasors through a release to those designated by name or otherwise specifically identified. *Alsup*, 101 Ill. 2d at 201. The court concluded that the releases in question did not name or otherwise designate Firestone and noted that the plaintiffs did not intend to release Firestone but only the "payers" and their successors and assigns. *Alsup*, 101 Ill. 2d at 202.

In *Brady*, the plaintiff was injured when, after averting a car which had swerved into its lane during a heavy snow, a truck went out of control and crashed into the office building where the plaintiff

was working. The plaintiff sued the car driver, the truck driver, and, on a theory of *respondeat superior*, the truck driver's employer. The plaintiff settled with the truck driver and the truck driver's personal insurance carrier for the policy limit. The written settlement agreement contained release provisions. Although not a party to the settlement agreement, the employer subsequently motioned to dismiss the claims against it on the ground that the settlement agreement released all parties. The trial court ruled that the settlement agreement discharged the employer and granted its motion to dismiss. *Brady*, 190 Ill. App. 3d at 574-75.

The release terms named the truck driver and his insurer and also discharged his or their " 'agents, servants, successors, heirs, executors, administrators, officers, directors and employees and insurers, and all other persons, firms, corporations, associations, partnerships or other entities.' " (Emphasis omitted.) *Brady*, 190 Ill. App. 3d at 576.

This court found that the release was an unambiguous general release and declined to consider extrinsic evidence as to the intent of the parties to release any and all persons or other entities. *Brady*, 190 Ill. App. 3d at 577-78. However, this court stated that *Alsup* held that in order for a release to discharge tortfeasors other than the ones who bargained for the release, the release must specifically identify the other tortfeasors. *Brady*, 190 Ill. App. 3d at 580. This court concluded that section 2(c) of the Act, as construed by *Alsup*, prevented an unqualified general release from discharging an employer who was not specifically identified in the release and was not a party to the settlement agreement that contained the release. *Brady*, 190 Ill. App. 3d at 583-84.

In *Cummings*, the plaintiffs sued McDonald's Corporation (McDonalds), claiming that McDonalds waged a war of harassment and intimidation against them after a jury awarded the plaintiffs' company a $52 million verdict in an underlying case. The plaintiffs alleged that McDonalds had breached a postjudgment settlement agreement which purportedly settled the underlying case and that McDonalds had hired other defendants, such as private detectives, to investigate and harass the plaintiffs. *Cummings*, 249 Ill. App. 3d at 292. The settlement agreement in question contained release provisions which stated that McDonalds and the plaintiffs wished to settle all potential litigation between them and defined McDonalds to include its " 'past and present officers, directors, employees, *agents and attorneys*.' " (Emphasis in original.) *Cummings*, 249 Ill. App. 3d at 321.

In *Cummings*, the plaintiffs relied on *Alsup* and argued on appeal

that the release did not discharge the non-McDonalds defendants because they did not specifically name or identify them. The Appellate Court, First District, determined that the non-McDonalds defendants were McDonalds' agents and held that *Alsup* permitted identification by means other than actual naming, such as by designating a class of persons. *Cummings*, 249 Ill. App. 3d at 322-23. The court concluded that the release in question encompassed and released all of the non-McDonalds defendants as agents of McDonalds.

We agree with *Cummings* that *Alsup* and its progeny, including *Brady*, do not require that a release must actually name other tortfeasors in order for the release to discharge the other tortfeasors. We also agree with *Cummings* that the designation of a class of persons in a release can satisfy the *Alsup* requirement of specific identification. This does not conflict with *Brady*, because the issue of class designation did not arise in that case.

In this case, the release contains two class designations that could apply to defendants. These class designations are (1) Indeck's agents; and (2) persons who acted on Indeck's behalf.

Plaintiff directs most of his attention to the class designation of "agents." Plaintiff first contends that the word "agents" in a release does not satisfy the *Alsup* requirement of specific identification. However, as previously noted, we believe that *Cummings* correctly held that a class designation such as "agents" can satisfy the *Alsup* requirement.

■ Plaintiff next contends that defendants were not Indeck's agents because they were independent contractors acting as auditors for Indeck. However, plaintiff's position is inconsistent with the allegations in his amended complaint that Indeck directed defendants to improperly defer assets in a financial statement and that defendants did so. Because it was Indeck who activated defendants, we conclude that defendants were Indeck's agents. See *Cummings*, 249 Ill. App. 3d at 322. Thus the class designation "agents" in the release encompassed defendants.

Even if we agreed with plaintiff, *arguendo*, that defendants were not Indeck's agents, we find that defendants certainly acted on behalf of Indeck. Therefore, the class designation in the release of "any person acting on [Indeck's] behalf" encompassed defendants.

■ Plaintiff's final argument regarding the release is that the release did not discharge defendants because plaintiff did not intend for the release to apply to defendants. Plaintiff asserts that unless he intended the release to apply to defendants it does not apply to them. Plaintiff supports his position with an affidavit regarding his intent when he executed the release.

Where a written instrument is clear and unambiguous, extrinsic evidence as to the party's intent is not admissible. *Brady*, 190 Ill. App. 3d at 578. In this case, the release unambiguously applied to Indeck's agents and persons who acted on Indeck's behalf. Defendants were members of these classes. Therefore, we may not consider parol evidence to determine plaintiff's intent with respect to whether the release encompassed defendants.

For these reasons, we conclude that the release encompassed defendants. Therefore, the trial court did not err when it determined that the release discharged the defendants.

Plaintiff next contends that the trial court erred when it ruled that the two-year statute of limitations provided by section 13—214.2(a) of the Code barred his cause of action against defendants. Indeck terminated plaintiff on September 21, 1990. Plaintiff does not dispute that his cause of action against defendants, if any, accrued by that date. Plaintiff filed his complaint against defendants on August 2, 1995. Thus, if the two-year statute of limitations provided by section 13—214.2(a) applied, it barred plaintiff's complaint against defendants. Plaintiff argues that a five-year statute of limitations provided by section 13—205 of the Code (735 ILCS 5/13—205 (West 1996)) applied and his complaint against defendants was not time barred.

■ Section 13—214.2(a) provides:

"Actions based upon tort, contract or otherwise against any person, partnership or corporation registered pursuant to the Illinois Public Accounting Act [(225 ILCS 450/0.01 *et seq.* (West 1996))], as amended, or any of its employees, partners, members, officers or shareholders, for an act or omission in the performance of professional services shall be commenced within 2 years from the time the person bringing an action knew or should reasonably have known of such act or omission." 735 ILCS 5/13—214.2(a) (West 1996).

Section 13—214.2(a) plainly sets out a two-year statute of limitations. However, plaintiff maintains that section 13—214.2(a) does not apply (at least not completely) to his cause of action. Plaintiff argues that (1) section 13—214.2(a) applies only to professional malpractice actions and, because his complaint against defendants is not a professional malpractice action, section 13—214.2(a) does not apply to it; and (2) section 13—214.2(a) applies only to firms or accountants registered under the Illinois Public Accounting Act (225 ILCS 450/0.01 *et seq.* (West 1996)) but neither BDO nor Graul was registered under that act so that section 13—214.2(a) applies, if at all, only to Krieberg.

We first address plaintiff's argument that section 13—214.2(a) applies only to malpractice actions. Plaintiff focuses on the phrase "in the performance of professional services" in section 13—214.2(a). Plaintiff asserts that neither the legislature nor any reported Illinois case has defined this phrase. Plaintiff maintains that the phrase indicates a legislative intent to limit the applicability of section 13—214.2(a) to professional malpractice cases. Plaintiff argues that, because of the limitation to professional malpractice actions, acts or omissions such as those alleged in his amended complaint that involve fraud or tortious interference but do not involve professional malpractice do not fall within the scope of section 13—214.2(a).

■ When construing a statute, a court should ascertain and give effect to the intent of the legislature using the language of the statute as the most reliable indicator of legislative intent. *In re S.G.*, 175 Ill. 2d 471, 480 (1997). When unambiguous terms in the statute are not specifically defined, a court should give the terms their plain and ordinary meaning. *Hayes v. Mercy Hospital & Medical Center*, 136 Ill. 2d 450, 455 (1990). To determine legislative intent, a court should read the statute as a whole and consider all relevant parts. *Advincula v. United Blood Services*, 176 Ill. 2d 1, 17-18 (1996). The construction of a statute is an issue of law and our review is therefore *de novo*. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237 (1996).

■ The plain language of section 13—214.2(a) leads us to conclude that the legislature did not intend to limit its applicability to professional malpractice actions. We can discern nothing in the language of section 13—214.2(a) which even hints at such a limitation. Rather, by its plain words, section 13—214.2(a) applies to actions based on tort, contract, or otherwise arising from acts or omissions in the performance of professional services involving accounting. This is broad language. If the legislature had intended to limit the applicability of the statute to professional malpractice actions, it could have simply said that. It did not do so. We should not impose, under the guise of statutory construction, limitations that are inconsistent with the plain meaning of the statute. *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996).

None of the authorities relied on by plaintiff persuades us that the legislature intended to limit the applicability of section 13—214.2(a) to professional malpractice actions. In the cases cited by plaintiff that have applied section 13—214.2(a), no court has limited its applicability to professional malpractice cases. On the contrary, these cases routinely apply section 13—214.2(a) to actions other than professional malpractice actions. See, *e.g.*, *Terrell v. Childers*, 920 F.

Supp. 854, 862 (N.D. Ill. 1996) (applying section 13—214.2(a) to statutory fraud claim); *Cashman v. Coopers & Lybrand*, 877 F. Supp. 425, 437 (N.D. Ill. 1995) (applying section 13—214.2(a) to common-law fraud claim).

The legislative history relied on by plaintiff is equally unpersuasive. It is not legislative history for section 13—214.2(a). Rather, it is legislative history for an analogous statute related to legal malpractice. Even construing this legislative history liberally in favor of plaintiff provides no support for limiting section 13—214.2(a) to malpractice actions. At most, the cited legislative history shows that section 13—214.2(a) applies to malpractice actions. It does not show that section 13—214.2(a) applies only to malpractice actions.

The foreign cases cited by plaintiff that held that a statute of limitations regarding the performance of professional services was limited to malpractice actions do not require us to construe section 13—214.2(a) as limited to malpractice actions. The statute of limitations in question in those cases, unlike section 13—214.2(a), specifically referenced a cause of action for malpractice.

The cases plaintiff cites regarding the scope of professional liability insurance policies are equally unpersuasive. These cases do not involve section 13—214.2(a).

A case not cited by the parties, *City National Bank v. Checkers, Simon & Rosner*, 32 F.3d 277 (7th Cir. 1994), provides support for the trial court's decision because it involves a factual pattern similar to the facts in this case. In *City National Bank*, the plaintiff, a bank, filed a claim for fraud and negligence against an accounting firm and one of its partners. The partner had overseen the preparation of allegedly improper financial statements for an individual who used the statements when he sought and obtained a loan from the bank on which he later defaulted. *City National Bank*, 32 F.3d at 278-79.

The accounting firm motioned to dismiss the bank's complaint on the ground that the two-year statute of limitations provided by section 13—214.2(a) barred the complaint. The United States Court of Appeals for the Seventh Circuit confirmed the decision of the district court to dismiss the complaint and held that section 13—214.2(a) was applicable to the fraud and negligence claims. *City National Bank*, 32 F.3d at 284.

In sum, based on the plain language of section 13—214.2(a), the cases relied on by the parties, and *City National Bank*, we conclude that section 13—214.2(a) is not limited in its application to professional malpractice cases, but also applies to cases alleging fraud by a public accountant. Accordingly, the trial court did not err when it determined that the two-year statute of limitations provided by section 13—214.2(a) applied to this case.

Plaintiff next contends that even if section 13—214.2(a) is not limited to professional malpractice actions and applied to this action it did not apply to all the defendants. Citing the language of the statute, plaintiff posits that section 13—214.2(a) applies only to persons or entities "registered pursuant to the Illinois Public Accounting Act" (Accounting Act) (225 ILCS 450/0.01 *et seq.* (West 1996)). Plaintiff asserts that neither BDO nor Graul was so registered at the time he filed his complaint against defendants and therefore section 13—214.2(a) does not apply to them. Plaintiff does not dispute Krieberg's registration under the Accounting Act and therefore concedes that section 13—214.2(a) would bar the complaint with respect to Krieberg if applicable to the complaint.

Defendants acknowledge that BDO was not registered under the Accounting Act when plaintiff filed his complaint against defendants on August 2, 1995. However, defendants established by documents attached to their motion to dismiss the amended complaint that BDO was registered under the Accounting Act at the time plaintiff's cause of action accrued and remained registered until November 30, 1994, when BDO's license expired. Defendants argue that BDO was therefore registered during the entire statute of limitations period and that section 13—214.2(a) should apply to BDO. Defendants also argue that section 13—214.2(a) applies to Graul as BDO's employee.

We agree with defendants that section 13—214.2(a) applies to those registered under the Accounting Act at the time the alleged act or omission in question occurred. It would be absurd to construe section 13—214.2(a) to mean that it applied to those registered at some other time. We must presume that the legislature did not intend an absurdity when it enacted a statute. *In re B.C.*, 176 Ill. 2d 536, 543 (1997). Therefore, because BDO was registered under the Accounting Act at the time of its alleged misconduct, we conclude that section 13—214.2(a) applied to it. Section 13—214.2(a) also applied to Graul because he was BDO's employee or a partner of BDO at the time and section 13—214.2(a) plainly applies to such persons.

For all these reasons, we conclude that the trial court did not err when it determined that the two-year statute of limitations provided by section 13—214.2(a) barred plaintiff's complaint in this case.

Plaintiff next contends that the trial court erred when it sanctioned him pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137). The trial court sanctioned plaintiff on the basis of the release and the statute of limitations issues. Plaintiff asserts that the trial court abused its discretion when it imposed these sanctions because his arguments in support of the release and the statute of limitations issues merely presented innovative and aggressive positions, includ-

ing questions of first impression, which were well within the range of acceptable argument sufficient to preclude sanctions under Rule 137.

■ Rule 137 imposes an affirmative duty on both litigants and attorneys to conduct an investigation of the facts and law before filing an action, pleading, or other paper. *Kellett v. Roberts*, 281 Ill. App. 3d 461, 464 (1996). The rule requires that a party or his or her attorney sign pleadings and other legal papers to certify that he or she has read the document, has made a reasonable inquiry into its basis, and believes that it is well grounded in fact or existing law or that there is a good-faith argument for the extension, modification, or reversal of existing law and that it is not interposed for any improper purpose such as to harass or cause unnecessary delay or needless increase in the cost of litigation. 155 Ill. 2d R. 137. If a party or attorney signs a pleading or other paper in violation of the rule, a court may impose sanctions upon the person who signed it, a represented party, or both. 155 Ill. 2d R. 137.

The decision to impose sanctions under Rule 137 is within the sound discretion of the trial court. *North Shore Sign Co. v. Signature Design Group, Inc.*, 237 Ill. App. 3d 782, 790 (1992). A reviewing court will not reverse a trial court's decision to impose sanctions absent an abuse of discretion. *O'Brien & Associates, P.C. v. Tim Thompson, Inc.*, 274 Ill. App. 3d 472, 482 (1995). A trial court abuses its discretion only if no reasonable person would take its view. *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074 (1995). However, this deferential standard does not prevent a reviewing court from independently reviewing the record and finding an abuse of discretion where the facts warrant. *Pritzker v. Drake Tower Apartments, Inc.*, 283 Ill. App. 3d 587, 590 (1996).

In this case, the trial court based its decision to impose sanctions on plaintiff on both the release and the statute of limitations issues. We will first address the question of sanctions based on the release issue.

The trial court set out its reasons for imposing sanctions on plaintiff in the amended order entered on June 12, 1996. In that order, the court found that the release clearly barred plaintiff's complaint against defendants. The court explained that the release, by using the terms "agents" and "any person acting on [Indeck's] behalf," clearly encompassed defendants. The court found that, in view of the release, plaintiff failed to establish a good-faith basis for believing that his action against defendants was well grounded in fact or law.

Rule 137 allows sanctions when a party asserts a legal proposition that is contrary to established precedent. *Ambrose v. Thornton*

*Township School Trustees*, 274 Ill. App. 3d 676, 685 (1995). A court should not impose sanctions on a party who presents objectively reasonable arguments for his position, regardless of whether the arguments are deemed to be unpersuasive or incorrect. *Ambrose*, 274 Ill. App. 3d at 685. It is not *per se* unreasonable to pursue a possible claim where the defendant has strong defenses. *In re Marriage of Sykes*, 231 Ill. App. 3d 940, 949 (1992).

In this case, our review of the record shows that plaintiff presented objectively reasonable arguments in support of his position that the release did not discharge defendants. Plaintiff first noted the holding in *Alsup* that the scope of a release as to other tortfeasors extends only to those specifically identified. See *Alsup*, 101 Ill. 2d at 201. Although *Cummings* held that class designations such as "agents" would satisfy the *Alsup* requirements for an effective release (*Cummings*, 249 Ill. App. 3d at 322-23), this district had not yet ruled on the class designation question. At the same time, there was case law in another district of the appellate court which held that a bright-line rule required that a tortfeasor be specifically named in order to be within the scope of a release in a contribution action. *Stro-Wold Farms v. Finnell*, 211 Ill. App. 3d 113, 116 (1991).

In view of these divergent authorities, plaintiff's arguments in support of his position were objectively reasonable. That is enough to render the imposition of sanctions an abuse of discretion. Accordingly, we conclude that sanctions should not have been imposed on plaintiff on the basis of the release issue.

We next address the question of whether the trial court abused its discretion when it imposed sanctions on plaintiff on the basis of the statute of limitations issue. In its amended order, the trial court stated that plaintiff filed his complaint against defendants more than three years after the two-year statute of limitations provided by section 13—214.2(a) had expired. The trial court imposed sanctions on plaintiff after finding that the statute of limitations barred plaintiff's claim and that, in the face of the statute of limitations, plaintiff had not provided a good-faith basis for believing that his action was well grounded in fact or law. We note, however, that the court commented, "There was certainly some novelty because it's a case of first impression as far as the Statute of Limitations in this particular matter."

In plaintiff's view, the statute of limitations did not clearly bar his complaint against defendants. Plaintiff's primary argument in support of his position is that no reported case had decided the issue of whether section 13—214.2(a) was limited to professional malpractice actions, and, based on the language of the statute and other authorities, it was reasonable to construe the statute as so limited.

Neither party cited, and our research has not disclosed, a case which directly resolved the question of whether section 13—214.2(a) is limited to professional malpractice actions. The only reported Illinois case we are aware of that applied section 13—214.2(a) applied it to an accounting malpractice action but did not determine whether section 13—214.2(a) was limited in its application to such actions. *Dancor International, Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill. App. 3d 666, 672 (1997). The federal cases cited by the parties applied section 13—214.2(a) to actions other than malpractice actions, but, as plaintiff points out, these cases did not address the question of limiting the applicability of section 13—214.2(a) to malpractice actions.

In support of his position, plaintiff argued that the phrase "the performance of professional services" in section 13—214.2(a) should be construed to limit the section's applicability to malpractice actions. As authority for this view, plaintiff relied on, *inter alia*, two foreign cases. These cases construed similar language in a similar statute to limit the applicability of that statute to malpractice actions. *Barger v. McCoy Hillard & Parks*, 120 N.C. App. 326, 335, 462 S.E.2d 252, 259 (1995); *Sharp v. Teague*, 113 N.C. App. 589, 592, 439 S.E.2d 792, 794 (1994).

We recognize that, unlike section 13—214.2(a), the statute that the foreign cases construed specifically referenced a malpractice action. See *Sharp*, 113 N.C. App. at 593, 439 S.E.2d at 794. Nonetheless, the foreign cases were arguably some authority for plaintiff to cite in support of his argument that section 13—214.2(a) should be limited in its applicability to malpractice actions.

Based on this record, we conclude that plaintiff made objectively reasonable arguments in support of his position that section 13—214.2(a) should be construed to limit its applicability to malpractice actions. Because plaintiff made objectively reasonable arguments in support of his position, we conclude that there was an insufficient basis for imposing sanctions on plaintiff on the statute of limitations issue.

We have determined that the trial court erred when it imposed sanctions on plaintiff with respect to both the release and statute of limitations issues. Those issues were the only bases that the trial court specified for imposing sanctions. Accordingly, we must reverse the trial court orders that imposed sanctions on plaintiff and assessed fees and costs against plaintiff pursuant to the sanctions. Therefore, we need not address defendants' cross-appeal regarding the propriety of the amount of the fees and costs.

Based on the foregoing, the dismissal of plaintiff's amended com-

430

plaint is affirmed and the imposition of sanctions and the assessment of fees and costs against plaintiff are reversed.

Affirmed in part and reversed in part.

RATHJE and HUTCHINSON, JJ., concur.