STEPHEN A. MYERS, Plaintiff-Appellant, v. HEALTH SPECIALISTS, S.C., Defendant-Appellee.

First District (2nd Division) No. 1—91—0272

Opinion filed January 21, 1992.

Rooks, Pitts & Poust, of Chicago (Terrence J. Madden, of counsel), for appellant.

Cotton, Watt, Jones & King, of Chicago (Russell Woody and Wesley Kennedy, of counsel), for appellee.

JUSTICE DiVITO delivered the opinion of the court:

In this case we must determine whether the circuit court properly granted summary judgment for defendant, and denied summary judgment for plaintiff, based on its conclusion that a release executed by plaintiff in connection with prior litigation between the parties barred plaintiff's claim in this litigation. For reasons that follow, we reverse and remand for a determination of plaintiff's damages.

Plaintiff Stephen A. Myers, an obstetrician/gynecologist, worked for defendant Health Specialists from July 1977 through June 1978 under a written employment agreement. The agreement provided that

> "[t]he Employer shall maintain malpractice insurance covering Employee with limits of not less than One Hundred Thousand Dollars ($100,000) per person and Three Hundred Thousand Dollars ($300,000) per incident. In addition, the Employer shall maintain extended coverage liability insurance covering the Employee with a limit of not less than One Million Dollars ($1,000,000)."

Pursuant to this agreement, defendant obtained "claims made" insurance, which provided coverage only for claims that were brought while plaintiff was insured under the policy. When plaintiff left defendant's employ, his coverage under the "claims made" policy necessarily terminated; neither party obtained "tail" coverage, which would have continued plaintiff's coverage after his employment ended. Defendant subsequently changed from "claims made" malpractice insurance to "occurrence" coverage for its employees; when defendant coupled this with "prior acts" coverage, employees were insured against any claim filed while the policy was in force, including

claims arising from acts occurring prior to the purchase of the "occurrence" policy. Because plaintiff was not listed among the insureds, however, he had no insurance against malpractice claims that might arise from acts he performed during the year of his employment.

In 1979, plaintiff filed suit against defendant (the 1979 litigation), asking for an accounting to enforce the compensation provisions of the employment agreement. That litigation resulted in a settlement agreement, based on a release plaintiff executed on January 2, 1980. The release included the following provision:

"[Plaintiff] *** has remised, released and forever discharged and, by these Presents, does *** remise, release, and forever discharge [defendant] of and from all manner of actions, causes, and causes of actions, suits, debts, sums of money, accounts, *** damages, judgments, executions, claims and demands, whatsoever, in law or in equity, and particularly, without limiting the generality of the foregoing, from all claims which were or might have been asserted in that certain action entitled *Stephen A. Myers, v. Health Specialists, S.C.*, Case No. 79 CH 621, or in any manner arising from or related to the subject matter of such action or, arising from any employment agreement between the [parties], which [plaintiff] now has against [defendant] or ever had, *** by reason of any matter, cause, or thing, whatsoever, on or at any time prior to the date of these Presents."

Seven years later, plaintiff was named as a defendant in a 1985 medical malpractice action (the Roberts litigation) in connection with a "Good Samaritan" emergency delivery that he performed during the time he was employed by defendant. When plaintiff tendered his defense to defendant's insurer, he learned to his surprise that the insurer would not defend him because he was not insured by defendant's policy. Because his own insurance company also refused to pay for his defense, plaintiff was forced to pay his own legal expenses. In that litigation, plaintiff moved for summary judgment based on the Good Samaritan defense. The circuit court granted his motion, and the appellate court affirmed. *Roberts v. Myers* (1991), 210 Ill. App. 3d 408, 569 N.E.2d 135.

Plaintiff then filed this declaratory judgment action in April 1987. He sought indemnity for any future costs, legal fees, and adverse judgments arising from acts performed during his employment with defendant as well as reimbursement for costs and legal fees incurred by his successful defense in the Roberts litigation. Count I of his first amended complaint was predicated on Illinois corporation and agency

law, while count II sought relief based on the employment agreement. Specifically, plaintiff alleged that defendant breached the agreement by refusing to continue to maintain insurance for acts he performed during his employment, in the form of either occurrence insurance or "tail" coverage, and by not providing the one million dollar extended coverage the agreement required. Defendant answered, raising four affirmative defenses: (1) the effect of the release plaintiff signed in the 1979 litigation; (2) failure to state a cause of action; (3) the act at issue was outside the scope of plaintiff's employment and thus not within defendant's potential *respondeat superior* liability; and (4) estoppel, based on plaintiff's "Good Samaritan" defense in the Roberts litigation.

Plaintiff moved for partial summary judgment on count II, arguing that defendant had breached the employment agreement as a matter of law by not providing insurance to cover his legal expenses for the Roberts litigation. He also moved to strike the first, second, and fourth affirmative defenses. Defendant moved for summary judgment as well, contending that the release barred plaintiff's suit because this claim arose from the employment agreement, and the release specifically encompassed all claims arising under the agreement.

In granting defendant's motion for summary judgment, the circuit court held that

> "the release is clear, precise and definite constituting an unambiguous document[.]
>
> * * *
>
> *** [T]he release in question is not a general release but is instead a special or particular release applying specifically to claims having their origin, stemming from or being the product of the employment agreement or conversely any breach thereof.
>
> The release, just as the contract of employment, is not an ambiguous writing, it is not capable of amplification by parol evidence, but instead expresses the intention of the parties being clearly manifested within the four corners of the document."

The court further noted that the parties were "educated and sophisticated" people who acted on advice of counsel in 1979, leading it to conclude that they intended "the natural ordinary meaning and intention of the language used," which in the court's view was "to terminate any dispute that might exist or be stimulated by their relationship as evidenced by the agreement." Any other interpretation of the release, the court cautioned, would mean that "the word 'Release' can

no longer be of significance in the legal lexicon." It then stated its finding that "the plaintiff, by virtue of the release of January 1980, released any claim he might have had against the defendant as the consequence of the failure to provide occurrence coverage." The court then granted defendant's motion and dismissed the entire action with prejudice. It also denied plaintiff's summary judgment motion and declared that the motion to strike defendant's other defenses was moot.

In this appeal, plaintiff asks this court to reverse the entry of summary judgment for defendant, to reverse the denial of his motion for partial summary judgment, to enter summary judgment in his favor, and to remand for a determination of damages and consideration of count I. Defendant urges us to affirm, and if we cannot, to remand for consideration of plaintiff's summary judgment motion and its affirmative defenses.

Summary judgment is "a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt" (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871), and all evidence in the record must be construed "strictly against the movant and liberally in favor of the opponent" (*Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871; *Carona v. Illinois Central Gulf R.R. Co.* (1990), 203 Ill. App. 3d 947, 949, 561 N.E.2d 239, 241, *appeal denied* (1991), 136 Ill. 2d 542). In considering a summary judgment motion, the circuit court's task is not to try any issue of fact, but rather

> "to determine whether any issues of material fact exist. [Citation.] Summary judgment is proper where the pleadings, depositions and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." (*Winnetka Bank v. Mandas* (1990), 202 Ill. App. 3d 373, 386-87, 559 N.E.2d 961, 969, citing Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).)

We review summary judgment orders *de novo*. (*Demos v. National Bank of Greece* (1991), 209 Ill. App. 3d 655, 659-60, 567 N.E.2d 1083, 1086.) In particular, when considering a circuit court decision in a contract action, "where the evidence consists mainly of documents[,] *** the [appellate] court is not bound by the trial court's finding and may make an independent determination on the facts." *Polo National Bank v. Lester* (1989), 183 Ill. App. 3d 411, 414, 539 N.E.2d 783, 785.

## I

Plaintiff first contends that the circuit court erred in holding that

the release barred his claims, entitling defendant to summary judgment. Characterizing the 1980 release as a "general release," plaintiff argues that the court's holding conflicts with three tenets of release law: (1) even if extremely broad, general releases do not bar claims that, like this one, are unknown to the parties at the time of the release; (2) general releases directed to specific, disputed claims do not bar other claims that are undisputed at the time of the release; and (3) a limited release, of claims in existence at the time of the release, does not bar later-arising claims.

Defendant, agreeing that the release is a general one albeit with specific portions, replies that the circuit court correctly held that the release barred plaintiff's claims because the release unambiguously covers "all claims *** arising from any employment agreement between [the parties here]," and plaintiff's current claim arises from the insurance provision of the employment agreement. In addition, defendant asserts plaintiff knew or should have known, or could have learned if sufficiently diligent, that his insurance terminated when his employment did. Plaintiff rejoins that, because this is a contract action, his alleged lack of diligence is irrelevant even though, in a tort action, it could be deemed contributory negligence.

The Illinois Supreme Court recently reviewed the principles of the law of releases in *Farm Credit Bank v. Whitlock* (1991), 144 Ill. 2d 440. In *Whitlock*, the defendant children wanted to buy a farm, but the plaintiff bank would finance the purchase only if the defendant children's parents agreed to use their own farm as security for the children's loan. The parties executed two notes in connection with the financing. Loan No. 1 was secured by the parents' farm and signed by the children and the parents; it was used primarily for the children's purchase, but some of the money retired a prior lien on the parents' farm. Loan No. 2, which covered the balance of the children's purchase, was secured by the children's farm and signed only by the children. The children defaulted on loan No. 2, but the bank agreed to accept a deed to their farm instead of instituting foreclosure proceedings. The agreement for deed in lieu of foreclosure contained the following provision:

"[The] Bank *** does hereby remise, release and forever discharge Borrower, *** of and from all manner of actions, causes and causes of action, suits, debts, sums of money, accounts, *** damages, judgments, executions, claims and demands, whatsoever, at law or in equity, and particularly without limiting the generality of the foregoing all claims relating to the mortgage loan transaction aforesaid and the conveyance of title hereun-

der, which either party *** ever had, now have or may have in the future, for, upon or by reason of any matter, cause or thing, whatsoever." (Emphasis omitted.) 144 Ill. 2d at 445.

When the bank later filed to foreclose on Loan No. 1, the defendants raised the release as an affirmative defense and moved for summary judgment. The bank argued that the release applied only to loan No. 2; defendants countered that the release extinguished all liability to the Bank. The circuit court granted the defendants' motion, and the appellate court affirmed (*Farm Credit Bank v. Whitlock* (1990), 202 Ill. App. 3d 609, 560 N.E.2d 460).

The supreme court reversed, finding that summary judgment was barred because unresolved questions of fact existed as to the parties' intent concerning the scope of the release, making it ambiguous. The court interpreted the agreement's "all actions" boilerplate, when combined with the "particularly" language, to mean that "the Bank release[d] the borrowers from all actions and claims, but *particularly* those relating to Loan No. 2." (Emphasis in original.) (*Whitlock*, 144 Ill. 2d at 448.) The court then held that the release was ambiguous on its face as to whether the parties intended to limit the embrace of the release to loan No. 2 or if it also encompassed loan No. 1. This ambiguity made summary judgment improper because it mandated consideration of extrinsic evidence to ascertain the parties' intent.

■ In reaching its conclusion, the supreme court reiterated that:

"A release is a contract, and therefore is governed by contract law. [Citation.] The intention of the parties to contract must be determined from the instrument itself, and construction of the instrument where no ambiguity exists is a matter of law. [Citation.]
***
Where the releasing party was unaware of other claims, Illinois case law has restricted general releases to the specific claims contained in the release agreement. ***
*** A general release is inapplicable to an unknown claim. [Citation.]" *Whitlock*, 144 Ill. 2d at 447-48.

■ Here, the release's own terms exclude plaintiff's claim. The release unequivocally states that it applies only to those claims that plaintiff "now has or ever had [against defendant] *on or at any time prior to*" January 2, 1980. (Emphasis added.) This language unambiguously conveys to us the parties' intent that, to fall within the release's embrace, a claim must have arisen on or before January 2, 1980. Under plaintiff's breach of contract theory, defendant asserts, plaintiff's claim arose during his employment, differentiating this

from his request for relief, which arose with the Roberts litigation. Defendant's interpretation, however, ignores the fact that prior to the Roberts litigation, plaintiff had incurred no legal expenses nor had he paid any premium for "tail" coverage. Thus, until 1987, plaintiff suffered no injury from defendant's alleged breach. Without such injury, or a real threat thereof, no justiciable claim arose from defendant's nonperformance of the employment agreement. (D. Dobbs, *Remedies*, §12.2, at 798; §12.1, at 786 (1973).) Therefore, the claim at issue did not arise "prior to" 1980. Accordingly, by a plain reading of its language, the release does not bar the claim before us.

■ Even if this claim did not fall within the release's time exemption, we would have to reverse the grant of summary judgment for defendant because the circuit court's characterization of the release at issue as a "special or particular release" was incorrect. The sweeping language of the release, strikingly similar to that found in the *Whitlock* release, renders it general. Moreover, the "particularly" provision itself, which at first seems to specify a certain set of claims, instead purports to release defendant from *"all* claims *** in *any* manner *** arising from *any* employment agreement between [the parties], which [plaintiff] now has against [defendant] or ever had, or which his heirs *** hereafter can, shall or may have, *** by reason of *any* matter, *** whatsoever."* (Emphasis added.) The breadth of this language is sufficient to transform the "particularly" provision itself into a general release. As such, under *Whitlock*, the release here cannot bar plaintiff's present claim. Plaintiff stated that he was unaware in 1980 of any potential need to enforce the insurance provision, and defendant presented no specific evidence to contradict him. Although we agree with defendant that final settlement of disputes is desirable, the cases defendant cites for the proposition that unknown but discoverable claims fall within a general release are inapposite because they address releases in the context of Federal securities and anti-trust law. Indeed, as the Seventh Circuit specifically stated in *Goodman v. Epstein* (7th Cir. 1978), 582 F.2d 388, 403, its decision was predicated on the policy requirements of Federal securities law, not on Illinois law. In this context, *Whitlock* teaches that a general release does not apply to an unspecified claim if the releasing party is unaware of such claim when executing the release. (*Whitlock*, 144 Ill. 2d at 448.) Accordingly, plaintiff's lack of awareness in 1980 of the Roberts litigation also precludes application of the release to the claim before us.

## II

Having determined that the circuit court erred in granting

defendant's motion, we now address its necessary result: the circuit court's denial of plaintiff's motion for summary judgment on count II. Defendant initially urges us, without citation to authority, to remand this matter to the circuit court because that court did not address the merits of plaintiff's motion. This argument betrays a misperception of the nature both of the question presented and of our review. As noted above, we consider summary judgment orders *de novo*; we, like the circuit court, must decide only whether the parties' pleadings and other submissions present an issue of triable fact and if not, whether plaintiff is entitled to judgment as a matter of law. This is a question of law, not of fact. Thus, remand is not necessary. In addition, defendant asserts that the release presents factual questions, which only the circuit court may address. Defendant, however, is estopped to make this disingenuous argument on appeal in defense against plaintiff's motion after contending in the circuit court, on its own summary judgment motion, that the release raised no issue of fact. (*Demos v. National Bank of Greece* (1991), 209 Ill. App. 3d 655, 670, 567 N.E.2d 1083, 1093 (one may not assume a position at trial, succeed, and switch positions on appeal).) We turn to the merits.

Plaintiff argues that, as a matter of law, defendant had a duty to provide him with medical malpractice insurance in accordance with the employment agreement and that it breached its duty, making defendant liable for his costs and legal fees in the Roberts litigation as well as for any future adverse judgments, costs, and fees in connection with any litigation that may be filed against him in the future for acts committed during his tenure with defendant. Defendant replies that it had no duty under the agreement to maintain "occurrence" or "tail" coverage, that "extended coverage liability insurance" did not refer to malpractice insurance, and that its affirmative defenses raise factual issues, precluding summary judgment.

As with the release, because the employment agreement is a contract, we must look first to its language to determine the intent of the parties. The agreement, however, states only that defendant was obliged to "maintain malpractice insurance [and] extended coverage liability insurance covering [plaintiff]" in certain amounts. It neither specifies the type or duration of coverage nor defines the meaning of "extended coverage liability insurance." Defendant asserts that given the agreement's lack of specificity, it had discretion to determine which kind of insurance to purchase and how long to provide it. This view has no support in contract law. On the contrary, the general rule is that contracts are construed against the drafter. (*Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 493, 505

N.E.2d 314, 319.) Here, the drafter was defendant, so any ambiguity will be construed against it.

In ascertaining the intent of the parties here, furthermore, we must consider not only the agreement itself but also the documents presented by the parties in support of their respective motions for summary judgment. In doing so, we are guided by the principle that even though these submissions must be construed liberally in favor of the opponent, "facts contained in an affidavit in support of a motion for summary judgment which are not contradicted by counteraffidavit are admitted and must be taken as true for purposes of the motion." *Purtill v. Hess* (1986), 111 Ill. 2d 229, 241, 489 N.E.2d 867, 871-72.

Here, the affidavits, of defendant's president since incorporation, Cornelius Bolton, and of plaintiff, contain no mention of any conversations concerning the insurance provisions of the employment agreement. The record, however, does contain transcripts of two depositions of plaintiff, one conducted in connection with the 1979 litigation and the other for this suit, as well as a transcript of a deposition by Bolton. In plaintiff's earlier deposition, he stated that prior to the execution of the employment agreement, defendant's employee, Dr. Burks, reviewed the agreement's provisions paragraph by paragraph during a two-hour meeting with plaintiff and another employee, Dr. Nelson Stringer. Dr. Burks' wife also attended the meeting. In the later deposition, plaintiff related what Dr. Burks told him about malpractice insurance: (1) that two types of insurance existed but that one was undesirable because it provided no long-term coverage, and that defendant would provide "really complete" coverage; (2) that plaintiff would have "absolutely no worry about malpractice insurance. [Defendant] will take care of it"; (3) that the $1 million coverage was "further substantiation that [defendant] was going to be entirely responsible for any malpractice liability that may have occurred as a result of [plaintiff's] employment"; and (4) that Dr. Burks said nothing suggesting that the "extended coverage liability insurance" covered anything other than professional malpractice. Even though three people (Burks, his wife, and Stringer) are in a position to dispute the accuracy of plaintiff's recollection of Dr. Burks' assurances, defendant submitted no statement from any of them. Accordingly, plaintiff's evidence remained uncontradicted, and as such, following *Purtill*, must be taken as true for the purposes of the motion. Thus, defendant raised no question of triable fact as to the parties' intent that defendant would provide insurance, even after plaintiff's employment ended, for at least certain acts he performed during his employment or as to whether "extended coverage liability insurance" applied to malprac-

tice claims. This absence of factual questions alone, however, does not entitle plaintiff to summary judgment, given defendant's affirmative defenses.

We already have determined, in part I, that the release is no bar to plaintiff's claims. As for the second defense, failure to state a cause of action, defendant has neglected to brief or argue it, and thus has waived the point. The remaining defenses, estoppel and absence of *respondeat superior* liability, both depend on a finding that the Roberts delivery was within the scope of plaintiff's employment with defendant. Because scope of employment is typically a factual question, defendant asserts, we should remand for a factual determination by the circuit court. Remand, however, is unnecessary because we need not decide whether the delivery was within the scope of plaintiff's employment in order to find the defenses inapplicable. Instead, we return to the employment agreement, which states that "Employer shall maintain malpractice insurance covering Employee," without mention of limiting the coverage to acts performed within the scope of employment. Again construing the agreement against the drafter, we find that under the plain meaning of this provision defendant agreed to provide plaintiff with malpractice insurance for acts performed during the period of his employment, regardless of whether he was acting outside the scope of his employment at the time he performed such acts. Because delivery occurred while plaintiff was employed by defendant, it falls within the scope of the coverage.

For the reasons stated above, we reverse the circuit court's order granting summary judgment for defendant and denying summary judgment for plaintiff, direct the circuit court to enter summary judgment for plaintiff on count II, and remand for a determination of plaintiff's damages.

Reversed and remanded with directions.

HARTMAN, P.J., and SCARIANO, J., concur.