FORMS WORLD OF ILLINOIS, INC., Plaintiff-Appellant, v. MAGNA BANK, N.A., *et al.*, Defendants-Appellees.

Fifth District   No. 5—01—0849

Opinion filed October 29, 2002.

Edward Renshaw, of Feirich/Mager/Green/Ryan, of Carbondale, for appellant.

Myron A. Hanna, of Stolar Partnership, of Belleville, for appellees.

JUSTICE KUEHN delivered the opinion of the court:

In this sale-of-goods case involving the statute of frauds (Ill. Rev. Stat. 1987, ch. 26, par. 2—201 (now 810 ILCS 5/2—201 (West 2000))), Forms World of Illinois, Inc., appeals from the trial court's June 4, 2001, order granting motions for summary judgment filed on behalf of Magna Bank, N.A., and Magna Group, Inc. We affirm.

The relationship between the parties dates back to December 1988, at which time Forms World of Illinois, Inc. (Forms World), offered to perform a systems management study on behalf of Magna Bank, N.A. (Magna Bank). The purpose of the study was to identify potential cost savings for Magna Bank relative to its forms management, systems management, and purchasing. Over the course of several months, Bud Powers, on behalf of Forms World, conducted this study. At the conclusion of this process, Bud Powers generated a proposal directed to Magna Bank. This proposal was dated May 10, 1989.

It is this proposal letter that is at the core of the controversy between the parties. Forms World argues that this five-page proposal, although labeled a proposal, is in fact the contract to which Magna Bank agreed. In support of this theory, Forms World offers only an undated interoffice memorandum authored by G. Thomas Andes (Tom Andes), the president of Magna Bank on the date of the proposal, and directed to "All Employees," which stated as follows:

"For the past five months, Mr. Bud Powers, owner of Forms World *** out of St. Louis, has been doing an internal study of Magna Bank *** to see if we might improve our forms design, control of flow of paper in our systems, inventory control[,] and inventory delivery system. As a result of this study, we have agreed to use his services over the next two years.

Please bear with him during the ensuing months as he gets into more detailed involvement in various departments. If you have the occasion to spend some time with Bud, I think you will find him astute in the banking area and quite helpful in reducing costs allocated to your department.

Any systems changes that are proposed will be placed into effect only with the appropriate department head approval, but it is important to cooperate with him during his fact-finding missions in order to utilize his services to the greatest degree.

The intent of the program should reduce costs and provide increased efficiency in maintaining and providing supplies to your department."

The memo was then signed "Tom Andes." Forms World acknowledges that Magna Bank did not provide it with any formal written confirmation or acceptance of its proposal.

Either in response to the proposal or otherwise, Magna Bank proceeded to utilize Forms World's services. Magna Bank paid all bills submitted by Forms World. This arrangement lasted longer than the two years referenced in Tom Andes' memorandum. Forms World brought this suit, however, because it contends that Magna Bank did not live up to the terms of the contract and did not purchase the percentage of its forms referenced in the proposal. The proposal contemplated that Magna Bank would purchase "substantially all" of its forms (less 15% to 20% related to previous business relationships) and order "substantially all" of its printing from Forms World. Because Magna Bank did not conduct at least 80% of this type of business with Forms World, Forms World argued that there was a breach of the contract.

The terms set forth in the proposal were based upon Magna Bank's then-asset size of between $540 million and $560 million. By 1990, Magna Bank's assets had grown to between $940 million and $960 million.

Forms World made additional proposals to Magna Bank and to Magna Group, Inc., Magna Bank's holding company. Forms World did not receive a response to any of these proposals, but it argues that in the fall of 1989 additional work related to Magna Bank's size increase was approved and assigned to Forms World. No documentation of this assignment was produced. Forms World contends that in the three

years following its 1989 proposal, there were numerous verbal modifications of the contract, but never anything in writing.

Several former employees testified by deposition about the matter. Steve Marsho was the vice president of operations for Magna Bank in 1989. His employment with Magna Bank ended sometime prior to December 1991. Steve Marsho read the above-referenced memorandum authored by Tom Andes and interpreted it to mean that Magna Bank would utilize all of Forms World's services as outlined in the proposal. He also testified that he believed that the term of the contract was for more than the two years referenced in the memorandum. A. Clay Williams testified that he worked for Magna Bank until his September 30, 1993, retirement. In 1989, A. Clay Williams maintained authority over the purchasing department. He testified that he understood that Magna Bank would buy the majority of its forms from Forms World for three to five years, and he stated that once Tom Andes became aware that these forms were being furnished to other banks, the furnishing of forms became an action on the part of Magna Group, Inc. Gary Hemmer was an executive vice president of both Magna Bank and Magna Group, Inc., in 1990. Gary Hemmer testified that there was no written documentation between the companies and that a major problem with the relationship related to the interpretation of the term "benchmark pricing," by which the price of the forms and printing was to be determined. There was never an agreement on pricing. Gary Hemmer testified that Forms World was unable to provide the cost savings originally represented in the proposal. The relationship was fraught with disagreement regarding whether Forms World was supposed to service the newly acquired banks and regarding pricing. Tom Andes is no longer associated with Magna Bank or Magna Group, Inc., but he was formerly the president of both entities. He testified that he recalled little about the relationship Forms World had with Magna Bank but that he felt that any relationship was only supposed to endure for two years. Additionally, Tom Andes indicated that after some time, various individuals began questioning the value of what Forms World provided to Magna Bank.

Rather than argue that it did or did not comply with the contractual terms alleged by Forms World, Magna Bank countered that the claim must fail because the alleged contract did not comply with the statute of frauds. The defendants filed motions for summary judgment and to dismiss on the bases that the contract was unenforceable pursuant to the statute of frauds and was unenforceable due to a lack of definite price and quantity terms. The trial court heard arguments on the motions, and on March 24, 2001, the court granted the motions for summary judgment. The trial court held that Forms World

could not maintain a breach-of-contract cause of action against Magna Bank because its "agreement" did not satisfy the statute of frauds. Furthermore, the trial court found that there was no meeting of the minds because one or more terms were too indefinite to enforce. Specifically, the trial court found ambiguity regarding the quantity of goods to be purchased, the pricing of the goods, the duration of the "agreement," and the establishment of a "level of achievement" at which Forms World could expect continued forms purchases. The trial court also concluded that Forms World could not prevail on a cause of action against Magna Group, Inc., for tortious interference with a contract, because the officers were protected by the privilege of using their business judgment in the interests of Magna Bank. Forms World could not overcome the privilege because the officers' actions were not unjustified or malicious.

Forms World appeals.

■ In determining the appropriateness of a summary judgment, the trial court strictly construes all evidence in the record against the movant and liberally in favor of the opponent. *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986). The court must consider all pleadings, depositions, admissions, and affidavits on file to decide if there is any issue of material fact. *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 72, 587 N.E.2d 494, 497 (1992). On appeal, courts review summary judgment orders *de novo*. *Myers*, 225 Ill. App. 3d at 72, 587 N.E.2d at 497.

■ We first review the trial court's judgment that there was no writing sufficient to satisfy the statute of frauds. Section 2—201(1) of the Uniform Commercial Code provides as follows:

> "[A] contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon[,] but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing." Ill. Rev. Stat. 1987, ch. 26, par. 2—201(1) (now 810 ILCS 5/2—201(1) (West 2000)).

Forms World argues that the requirement is satisfied by its proposal and the undated Tom Andes memorandum. Assuming that the proposal is in fact the contract, that contract is not signed by any Magna Bank agent or representative as clearly required. The undated memorandum is signed. The issue is whether the undated, signed memorandum complies with the statute of frauds.

■ Forms World acknowledges that the memorandum contains no quantity term, but it argues that the memorandum can be linked to the proposal in order to satisfy the statute of frauds. In Illinois, the writing must contain a quantity term in order to comply with the statute of frauds. See *Zayre Corp. v. S.M.&R. Co.*, 882 F.2d 1145, 1154 (7th Cir. 1989). The memorandum at issue does not contemplate or otherwise specify a quantity of product. Even if we agreed that one writing can omit a quantity requirement but satisfy that same requirement by a link to another writing, the writing lacking a quantity designation must at least reference the document to which it intends to be linked. The Tom Andes memorandum makes absolutely no reference to the proposal or any other document. Therefore, the memorandum could not be linked to the proposal in order to satisfy the statute of frauds.

■ Forms World also argues that a written contract was not required because both parties were merchants. The statute of frauds exempts merchants under the following limited circumstances:

"[I]f within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) [the writing] against such party unless written notice of objection to its contents is given within 10 days after it is received." Ill. Rev. Stat. 1987, ch. 26, par. 2—201(2) (now 810 ILCS 5/2—201(2) (West 2000)).

Forms World contends that Forms World and Magna Bank are merchants and that Forms World's May 10, 1989, proposal constituted the writing to which Magna Bank had but 10 days to object. With no objection having been produced, Forms World argues that the terms of its proposal are binding upon Magna Bank.

■ The question then is whether Magna Bank is a merchant. The term "merchant" is defined in the Uniform Commercial Code as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill." Ill. Rev. Stat. 1987, ch. 26, par. 2—104(1) (now 810 ILCS 5/2—104(1) (West 2000)). The Uniform Commercial Code also defines the phrase "between merchants" as "any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants." Ill. Rev. Stat. 1987, ch. 26, par. 2—104(3) (now 810 ILCS 5/2—104(3) (West 2000)).

■ Without going further, it would seem clear that because Forms

World's business is the sale of forms and providing printing needs, Magna Bank could not be deemed a merchant in that arena. Forms World held itself out as an expert that could vastly reduce Magna Bank's forms and printing costs by careful analysis of usage and need and by the application of Forms World's recommendations. Magna Bank certainly did not hold itself out as an expert on such matters. Magna Bank, in its banking functions, is a mere consumer of forms and printing. Magna Bank does not resell these forms or hold itself out as a copy service to the general public. Despite the rather patent lack of merchant status, Forms World directs us to a formal comment attached to the definition of merchant. That comment indicates that even banks can be deemed merchants, stating further that this only applies to banks in their "mercantile capacity." 810 ILCS Ann. 5/2—104, Uniform Commercial Code Comment 2, at 70 (Smith-Hurd 1993). We interpret this comment to mean that a bank can be deemed a merchant of goods in which it commonly deals. See, *e.g.*, *Bank One Milwaukee, N.A. v. Loeber Motors, Inc.*, 293 Ill. App. 3d 14, 23, 687 N.E.2d 1111, 1117 (1997) (in which the court concluded that a bank was a merchant of automobiles in light of the bank's lengthy history of leasing automobiles). The purchase of office supplies for ultimate use by Magna Bank is not sufficient to treat Magna Bank as a merchant in the sales of forms and copies.

Furthermore, the writing of confirmation contemplated by the language of the statute could not be the proposal touted to be the writing in this case. To hold otherwise makes little sense. As the reader might expect, the proposal is couched in proposal-like terms. In reading the proposal, one does not get the sense that the letter represents a contract between the parties. The document reads as if a negotiation between the parties had just begun. The proposal "confirms" nothing.

■ Because we conclude that Forms World could not establish that it had the writing necessary because of the statute of frauds, we find that the summary judgment in favor of Magna Bank was appropriate. In light of our conclusion, we do not need to address the alternate grounds upon which the trial court based its decision.

Because there was no enforceable contract between Forms World and Magna Bank, we conclude that Magna Group, Inc., could not have tortiously interfered with that contract. See *Galinski v. Kessler*, 134 Ill. App. 3d 602, 610, 480 N.E.2d 1176, 1182 (1985) (establishing that the existence of a valid and enforceable contract between the parties is a necessary element of the tort of intentional interference with a contract). The trial court's entry of a summary judgment on this issue was correct.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is hereby affirmed.

Affirmed.

MAAG, P.J., and HOPKINS, J., concur.