# Illinois Official Reports

## Appellate Court

---

***Vanguard Energy Services, L.L.C. v. Shihadeh*, 2017 IL App (2d) 160909**

---

| | |
|---|---|
| Appellate Court Caption | VANGUARD ENERGY SERVICES, L.L.C., Plaintiff-Appellant, v. IBRAHIM M. SHIHADEH, d/b/a Creative Designs Kitchen and Baths, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-16-0909 |
| Filed | August 16, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 15-L-940; the Hon. Robert G. Kleeman, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Bryan M. Sims, of Sims Law Firm, Ltd., of Naperville, for appellant.<br><br>Lawrence M. Benjamin, of Neal, Gerber & Eisenberg, of Chicago, for appellee. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices Jorgensen and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Vanguard Energy Services, L.L.C., is a supplier of natural gas. Defendant, Ibrahim M. Shihadeh, d/b/a Creative Designs Kitchen and Baths, purchased natural gas from plaintiff for his business. Plaintiff alleged that, in February 2014, it entered into an agreement with defendant to supply natural gas for the 2014-15 and 2015-16 winters and that, in June 2014, the parties agreed that plaintiff would provide additional gas for the same time periods. When defendant cancelled the gas order with plaintiff, plaintiff filed an amended, five-count complaint. Count I alleged breach of the first agreement, and count II alleged breach of the second agreement, and they are the only counts at issue on appeal. Defendant filed a motion to dismiss pursuant to section 2-619(a)(7) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(7) (West 2014)), arguing that the breach-of-contract claims were barred by the statute of frauds contained in section 2-201 of the Uniform Commercial Code (UCC) (810 ILCS 5/2-201 (West 2014)). The trial court agreed and dismissed the counts. Plaintiff concedes that natural gas is "goods," that the price was more than $500, and that therefore, on its face, the statute of frauds applies. See *id.* Plaintiff contends, however, that two exceptions to the statute of frauds apply. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    Our recitation of the facts is based on the pleadings. Defendant first became a customer of plaintiff in 2009 and purchased natural gas to heat his building.

¶ 4    Natural gas can be purchased from plaintiff either on the spot market or at a fixed price. On the spot market is where the customer purchases gas at the current market rate. When purchasing gas at a fixed price, the customer agrees to purchase a certain volume of gas, for a certain time period, at a fixed price in order to protect himself from the fluctuating prices found on the spot market. Defendant purchased gas from plaintiff both on the spot market and at a fixed price from 2009 through 2013.

¶ 5    In February 2014, defendant agreed to purchase 25% of his anticipated natural gas needs at a fixed price for the 2014-15 and 2015-16 winters. On June 18 and 20, 2014, the February 2014 agreement was confirmed by e-mail without protest (February agreement). On June 27, 2014, the parties agreed that plaintiff would provide defendant an additional 50% of his anticipated natural gas needs at a fixed price for the same time periods (June agreement).

¶ 6    On February 2, 2015, plaintiff received a letter from defendant terminating plaintiff's services, effective April 30, 2015. Plaintiff warned defendant that, if he insisted on terminating services, plaintiff would be forced to "unwind" defendant's fixed price positions. Defendant, however, insisted on terminating, and plaintiff alleged that it incurred damages as a consequence. Following defendant's refusal to pay those damages, plaintiff filed suit. Count I alleged breach of the February agreement, and count II alleged breach of the June agreement. Plaintiff did not allege the existence of any written confirmation of the June agreement.

¶ 7    Defendant filed a motion to dismiss the breach-of-contract claims set forth in counts I and II pursuant to section 2-619(a)(7) of the Code. Defendant argued that the oral agreements alleged in both counts were barred by the statute of frauds contained in section 2-201(1) of the UCC. The trial court agreed and dismissed both counts.

¶ 8    Plaintiff timely appeals, contending that the trial court erred in granting defendant's section 2-619(a)(7) motion to dismiss.

¶ 9                                      II. ANALYSIS

¶ 10            A. Standard of Review and the UCC Statute of Frauds

¶ 11    " '[A] motion to dismiss, pursuant to section 2-619 *** admits the legal sufficiency of the *** complaint, but asserts an affirmative defense or *** matter that avoids or defeats the *** claim.' " *Eighteen Investments, Inc. v. NationsCredit Financial Services Corp.*, 376 Ill. App. 3d 527, 532 (2007) (quoting *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006)). In considering a motion to dismiss under section 2-619, a court must interpret all pleadings and supporting materials in favor of the nonmoving party. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997).

¶ 12    A statute-of-frauds defense is properly raised under section 2-619(a)(7). 735 ILCS 5/2-619(a)(7) (West 2014). We review *de novo* a ruling on a section 2-619 motion. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 418-19 (2002).

¶ 13    The UCC's statute of frauds provides in pertinent part:

> "(1) Except as otherwise provided in this Section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." 810 ILCS 5/2-201(1) (West 2014).

¶ 14    Plaintiff does not dispute that its product, natural gas, is considered "goods" and that, on its face, section 2-201(1) is applicable because counts I and II relate to oral agreements. Plaintiff argues, however, that the lack of a writing is not fatal to its claims based on the oral agreements because of the "merchant exception" (810 ILCS 5/2-201(2) (West 2014)) and the "specially manufactured goods exception" (810 ILCS 5/2-201(3)(a) (West 2014)) under the UCC.

¶ 15                              B. Merchant Exception

¶ 16    The statute of frauds exempts contracts between merchants under the following limited circumstances:

> "[I]f within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) [requiring a contract for a sale of goods for $500 or more to be in writing] against such party unless written notice of objection to its contents is given within 10 days after it is received." 810 ILCS 5/2-201(2) (West 2014).

¶ 17    Plaintiff contends that plaintiff and defendant are merchants and that, because the e-mail confirmation it sent with respect to the February 2014 agreement set forth in count I was not objected to within 10 days, it was exempt from memorializing the agreement in writing.

¶ 18    The question we must determine first is whether defendant is a merchant. The term "merchant" is defined in the UCC as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." 810 ILCS 5/2-104(1) (West 2014). The trial court followed the interpretation of this definition set forth in *Forms World of Illinois, Inc. v. Magna Bank, N.A.*,

334 Ill. App. 3d 1107 (2002), in which the appellate court held that a mere consumer of goods who does not resell the goods cannot be considered a merchant. *Id.* at 1112-13.

¶ 19    Citing comment 2 of the UCC comments to section 2-104 (810 ILCS Ann. 5/2-104, Uniform Commercial Code Comment 2, at 106 (Smith-Hurd 2009)) and *Traxys North America LLC v. Evraz Claymont Steel, Inc.*, No. 09-684, 2011 WL 1322780 (D. Del. Apr. 4, 2011), an unreported federal decision, plaintiff does not argue that defendant has knowledge or skill in the goods sold as part of the transaction. Rather, plaintiff asserts that defendant is a merchant because defendant, "as a person engaged in business, has the knowledge or skill to engage in business communications." In its reply brief, plaintiff notes that comment 2 "involves the non-specialized practice of answering mail, something everyone in the business world is expected to be able to do." Plaintiff highlights the e-mail confirmation sent to defendant's agent, which plaintiff believes "demonstrates Defendant's ability to engage in business communications." In other words, plaintiff appears to argue that, because defendant is engaged in business activities, he has the knowledge or skill peculiar to the "practices" involved in the transaction (810 ILCS 5/2-104(1) (West 2014)).

¶ 20    The cardinal rule of statutory interpretation, to which all other rules are subordinate, is to ascertain and give effect to the intent of the legislature. *People v. Maggette*, 195 Ill. 2d 336, 348 (2001). In determining the legislative intent, a court should first consider the statutory language. This is the best means of determining the legislative intent. *Id.* The language of the statute must be accorded its plain and ordinary meaning. *People v. Diggins*, 235 Ill. 2d 48, 54 (2009). It is never proper for a court to depart from plain language by reading into the statute exceptions, limitations, or conditions that conflict with the clearly expressed legislative intent. *People v. Blair*, 215 Ill. 2d 427, 443 (2005). If the plain language reveals the legislative intent, we will give that intent effect without resorting to other interpretive aids, such as committee comments. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010); *People v. Hari*, 218 Ill. 2d 275, 295 (2006).

¶ 21    Plaintiff ignores the plain language of the statute, which clearly and unambiguously expresses the legislature's intent. In defining the term merchant, the legislature intended that the knowledge or skill of the purchaser is specifically related to the "knowledge or skill peculiar to the practices or goods *involved in the transaction*." (Emphasis added.) 810 ILCS 5/2-104(1) (West 2014). Here, the transaction involved the purchase of natural gas to heat defendant's building. Plaintiff makes no allegation that defendant has any knowledge or skill specifically related to the natural gas industry. Had the legislature intended to include all business persons in this exception, as the UCC comment intimates, it certainly could have said as much.

¶ 22    In *Forms World*, the plaintiff, a seller of business forms, sued the defendant, Magna Bank, alleging breach of contract after Magna Bank allegedly agreed to purchase forms pursuant to the plaintiff's written proposal letter. The plaintiff argued that a written contract was not required because both parties were "merchants" under section 2-201(2) of the UCC. Citing the definition of "merchant" in section 2-104(1) of the UCC, the Fifth District Appellate Court found it clear that, because the plaintiff's business was selling forms and providing printing needs, Magna Bank could not be deemed a merchant in that arena. It found that "Magna Bank, in its banking functions, is a mere consumer of forms and printing. Magna Bank does not resell these forms or hold itself out as a copy service to the general public." *Forms World*, 334 Ill. App. 3d at 1112-13.

¶ 23    Even if we were to reject the broad language in *Forms World*, *i.e.*, that to be considered a merchant the purchaser must resell the product that was purchased, the definition of merchant should not be expanded to include a purchaser who is simply the end user or ultimate consumer of the goods. In *Forms World*, the court did not consider Magna Bank a merchant when it purchased forms it used in conducting its business. The court stated that "[t]he purchase of office supplies for ultimate use by Magna Bank is not sufficient to treat Magna Bank as a merchant in the sales of forms and copies." *Id.* at 1113. Similarly, here, defendant was an ultimate consumer, and we do not conclude that he was a merchant when he purchased natural gas to heat his building.

¶ 24    Plaintiff argues that the conclusion in *Forms World* is at odds with comment 2 of the UCC comments and that "this conclusion has, unsurprisingly, been criticized by the *Traxys* court." First, as comment 2 is at odds with the plain language of the statute, we reject this argument. Second, *Traxys*,[1] and the cases cited therein, can be reconciled with the plain language of the merchant definition. In *Traxys*, the buyer purchased raw material used in making steel. *Traxys*, 2011 WL 1322780, at *1. In *Jame Fine Chemicals Co. v. Hi-Tech Pharmacal Co.*, 44 Fed. App'x 602, 603-04 (3d Cir. 2002), the buyer purchased a raw ingredient it used in making cough syrup. In *American Plastic Equipment, Inc. v. CBS, Inc.*, 886 F.2d 521, 523 (2d Cir. 1989), the buyer purchased "inactive" molds for use in producing plastic products. Finally, in *Leonard Pevar Co. v. Evans Products Co.*, 524 F. Supp. 546, 547 (D. Del. 1981), the buyer purchased plywood it used in constructing buildings. In all of those cases, the buyers could be seen as having knowledge or skill peculiar to the transactions when they purchased goods directly related to the production of goods they were engaged in manufacturing. Those buyers were not the end users or ultimate consumers of the goods purchased.

¶ 25    Accordingly, because we determine that defendant is not a merchant, the exception is inapplicable.

¶ 26                              B. Specially Manufactured Goods Exception

¶ 27    A contract that does not satisfy the requirements of the statute of frauds in section 2-201(1), but that is valid in other respects, is enforceable under the UCC:

> "(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement[.]" 810 ILCS 5/2-201(3)(a) (West 2014).

Plaintiff argues that the gas, which was the subject of both counts I and II, was specially manufactured for defendant, and therefore, under section 2-201(3)(a), no written contract was required.

¶ 28    In order to determine whether a product was specially manufactured, we look to four distinct criteria: "(1) the goods must be specially made for the buyer; (2) the goods must be unsuitable for sale to others in the ordinary course of the seller's business; (3) the seller must have substantially begun to have manufactured the goods or to have made a commitment for

---

[1]Federal district court decisions are neither binding nor precedential. This is especially true when a decision is unreported. *County of Du Page v. Lake Street Spa, Inc.*, 395 Ill. App. 3d 110, 122 (2009).

their procurement; and (4) the manufacture or commitment must have been commenced under circumstances reasonably indicating that the goods are for the buyer and prior to the seller's receipt of notification of contractual repudiation." *Colorado Carpet Installation, Inc. v. Palermo*, 668 P.2d 1384, 1389 (Colo. 1983). "In determining whether goods are specially manufactured, courts have traditionally looked to the goods themselves. The term 'specially manufactured,' therefore, refers to the nature of the particular goods in question and not to whether the goods were made in an unusual, as opposed to the regular, business operation or manufacturing process of the seller." (Internal quotation marks omitted.) *Webcor Packaging Corp. v. Autozone, Inc.*, 158 F.3d 354, 357 (6th Cir. 1998). Therefore, "the proponent must convince the court that the goods themselves have some feature that makes the product marketable only to the buyer." *Id.*

¶ 29　　Plaintiff claims that the natural gas was specifically set aside for defendant for a particular time period, in a particular volume, and at a particular price. In order to sell the fixed-price gas to another customer, plaintiff asserts, it would have to find someone who needed the same volume of gas for the same time period and who was willing to pay more than market rate, as gas prices had declined. At oral argument, plaintiff outlined how the gas was sold when defendant did not purchase it at the purportedly agreed fixed price. Plaintiff explained that it was able to salvage the sale on the open market but took a loss due to the higher rate defendant allegedly agreed to.

¶ 30　　Plaintiff's explanation demonstrates that there was no feature of the gas itself that made it unmarketable for others. " '[T]he unsalable quality of the goods presumably must be found in their characteristics of special manufacture and not in such tests as lost markets, passed seasons, or the objective inability of the particular seller to dispose of the goods for reasons unrelated to their nature as prescribed by the buyer.' " *Colorado Carpet*, 668 P.2d at 1390 (quoting 2 Richard W. Duesenberg & Lawrence P. King, Bender's Uniform Commercial Code Service § 2.02[4], at 2-32 (1982)). Plaintiff's complaints about time, volume, and price fit directly into the language quoted in *Colorado Carpet*. As such, we find that the gas was not specially manufactured for defendant and that neither of the purported agreements falls within that exception to the statute of frauds.

¶ 31　　　　　　　　　　　　　　III. CONCLUSION

¶ 32　　Based on the preceding, the judgment of the trial court granting defendant's section 2-619(a)(7) motion to dismiss counts I and II of plaintiff's amended complaint is affirmed.

¶ 33　　Affirmed.