FIRST DISTRICT
SIXTH DIVISION
MARCH 25, 2011

No. 1-09-3205

| | | |
|---|---|---|
| ALBERT IVAR GOODMAN, the Executor of the Estate of Edith-Marie Appleton and Trustee of the Edith-Marie Appleton Trust, | ) ) ) ) | |
| Plaintiff-Appellee, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| v. | ) ) | No. 07 L 421 |
| PER K. HANSON, | ) ) | Honorable |
| Defendant-Appellant. | ) ) | Brigid McGrath, Judge Presiding. |
| (Charles Martin and Benham, Ichen and Knox, LLP, | ) ) | |
| Defendants.) | ) ) | |

JUSTICE ROBERT E. GORDON delivered the judgment of the court, with opinion.
Justices Cahill and McBride concur in the judgment and opinion.

**OPINION**

This matter is before us on interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 1, 1994), to consider two questions certified by the trial court. Plaintiff is the executor and principal heir of the estate of Edith-Marie Appleton (decedent), and is co-trustee and principal beneficiary of the Edith-Marie Appleton Trust (trust). Plaintiff brought suit against defendant Per K. Hanson and his former law firm, Erickson, Papanek, Peterson, and Erickson (EPPE),[1] for legal malpractice based on Hanson's allegedly negligent failure to file an Illinois estate and generation-skipping transfer tax return. That suit was settled, and the parties entered

---

[1] During a portion of the time encompassed by the proceedings, Hanson was a partner in the law firm of Erickson, Papanek, Hanson, Peterson, which was the predecessor to EPPE.

into a "Settlement Agreement and Mutual General Release" (release).

Plaintiff later filed a second suit against Hanson and EPPE for legal malpractice, and against Charles Martin and the accounting firm of Benham, Ichen & Knox, LLP, for accounting malpractice; the basis for the malpractice claims was Hanson's failure to take allowable deductions on the federal estate tax return. Hanson moved to dismiss the suit pursuant to section 2-619(a)(6) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(6) (West 2008)), claiming that the release barred plaintiff's claim. Plaintiff opposed the motion, arguing that the claims arising out of the federal estate tax were unknown to plaintiff at the time the release was signed. The trial court denied Hanson's motion in relevant part. After plaintiff had amended his complaint several times, Hanson filed a motion to dismiss plaintiff's fourth amended complaint pursuant to section 2-619(a)(9) of the Code; the trial court denied Hanson's motion. Hanson then moved for a permissive interlocutory appeal pursuant to Supreme Court Rule 308, and the trial court granted Hanson's motion, certifying two questions for review. We answer both questions in the negative.

## BACKGROUND

Plaintiff was the only son and principal heir of the decedent, who died testate on December 9, 1999. Plaintiff was named executor of her estate. At the time of her death, the decedent was the settlor, trustee, and beneficiary of a trust that held most of the decedent's assets; upon the decedent's death, plaintiff became co-trustee and the principal beneficiary of the trust. The trust provided that the trustee was to pay "all reasonable costs and expenses attendant the administration of the Estate, including taxes."

2

Hanson had been employed by the decedent for many years prior to her death, and plaintiff retained Hanson as the attorney for the executor of the estate and for the trustees of the trust. Hanson filed decedent's last will and testament for probate on December 14, 1999. The will was admitted to probate and plaintiff was appointed as executor on January 19, 2000.

Hanson performed a number of duties related to the administration of the estate. Among his duties was the preparation and filing of the Illinois estate and generation-skipping transfer tax return (Illinois return). As part of his duties, Hanson also notified Florida State University of the filing and admission to probate of the decedent's estate and of the final date to file claims against the estate. Litigation ensued with Florida State, and Hanson moved to withdraw as attorney for the executor with respect to the litigation, which was granted approximately March 12, 2001. Attorneys Sherman C. Magidson and Richard Miller represented the estate with respect to the claim.

Hanson, with assistance from his law firm, continued to represent the executor with respect to the administration of the estate and trust. Prior to June 1, 2003, Hanson terminated his employment with EPPE and practiced law as a sole practitioner; Hanson continued to represent the executor and trustee. On January 21, 2005, Hanson withdrew as plaintiff's attorney, and attorney Paul S. Shapiro was substituted as the attorney for the executor and the trust.

*First Lawsuit*

On March 21, 2005, plaintiff filed a lawsuit against Hanson and EPPE in the probate division of the circuit court of Cook County. In his complaint, plaintiff in part alleged that Hanson and EPPE had committed malpractice in the filing of the Illinois return.

3

According to the complaint, Hanson had failed to file the Illinois return on time and did not seek an extension of time in which to file the return. When plaintiff learned of the delay, he called Hanson and asked if there was a problem. Hanson told plaintiff not to worry, that Hanson had a meritorious excuse for not having timely filed the Illinois return, and that the Attorney General's office would not take any adverse action against the estate. On September 18, 2003, plaintiff received a letter from the Attorney General's office rejecting Hanson's excuses as lacking merit, turning down Hanson's offer of $500 to settle the claim, and announcing an intention to seek penalties of approximately $1.4 million from the estate and trust. When confronted by plaintiff, Hanson admitted that the delay was wholly Hanson's fault and that Hanson would personally be responsible for and pay any penalties imposed.

In late 2003 or early 2004, plaintiff learned that the Attorney General's office had rejected all of Hanson's excuses and was intending to collect the entire penalty. Plaintiff empowered accountant Charles Martin to seek a final resolution of the penalty. Martin negotiated a settlement of 10% of the claimed penalty, or approximately $140,000, in early 2004.

In mid-February 2004, Hanson issued a check to the Cook County treasurer for approximately $65,000. Hanson then directed the Attorney General's office to apply almost $75,000 of excess funds which had previously been deposited by the trust on behalf of the estate toward payment of the settlement. Plaintiff claimed no knowledge of this payment. Plaintiff claimed of learning of the payment when he received a billing statement from Hanson dated February 19, 2004. The statement credited the estate with a payment of $74,874 toward its outstanding balance of $185,089.61; plaintiff had previously disputed the amount of the balance

4

due.

On approximately December 19, 2005, plaintiff, Hanson, and EPPE entered into a settlement agreement, which included a mutual general release of all parties. While Hanson and EPPE denied any error or omission in the performance of legal services on behalf of the estate or trust, they agreed to pay plaintiff $35,000 and released any claim for unpaid legal fees.

The release entered into by plaintiff read:

"General Release by Albert Ivar Goodman, individually, as Executor of the Estate of Edith-Marie Appleton, Trustee of the Edith-Marie Appleton Trust and President of the Edith-Marie Appleton Foundation

In consideration of the sum of Thirty-five Thousand Dollars ($35,000) ***, the adequacy of which is hereby acknowledged by the parties, Albert Ivar Goodman, individually as Executor of the Estate of Edith-Marie Appleton, as Trustee of the Edith-Marie Appleton Trust and as President of the Edith-Marie Appleton Foundation and his heirs, representatives, administrators, successors and assigns do hereby remise, release and forever discharge Per K. Hanson, individually, The Firm of Per K. Hanson Associated, P.C., Erickson, Papanek, Peterson, Erickson, successor to Erickson, Papanek, Hanson, Peterson, and their representatives, executors, heirs, agents, administrators, personal representatives,

successors, insurers and assigns, from any and all manner of actions, cause or causes of action, suits, debts, sums of money, accounts, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands, whatsoever, known or unknown, in law or in equity, or for any other reason whatsoever, from the beginning of the world to the date hereof, and including, but not limited to, any and all claims and matters that have been asserted in the Litigation or that could have been asserted in the Litigation, and any and all claims arising out of or in any way related to the obligations, duties and management or administration of the Estate and/or Trust, Hanson and EPPE's fees and expenses, and the rendering of professional services by Hanson, The Firm of Per K. Hanson Associated, P.C., and EPPE and any and all claims which were asserted or could have been asserted in the Litigation in law or equity, the liability for which is expressly denied by Hanson, The Firm of Per K. Hanson Associated, P.C., and EPPE ***."

On December 30, 2005, the probate court entered an order approving the settlement, stating:

"The Complaint and all claims and causes of action between the Estate, Trust, Hanson and EPPE as more fully described in the

Settlement Agreement and Mutual General Release are hereby dismissed with prejudice, pursuant to the Settlement Agreement and Mutual General Release, and this dismissal shall be a bar to any claim or cause of action asserted or which could have been asserted with respect to the performance of professional services by Hanson and EPPE to the Estate and Trust, with each party is to bear his or her costs in the litigation."

*Second Lawsuit*

On January 12, 2007, plaintiff filed a second lawsuit against Hanson and EPPE for legal malpractice, and also filed suit against Charles Martin and Benham, Ichen & Knox, LLP, for accounting malpractice.[2] In the complaint, plaintiff alleged malpractice based on the same facts surrounding the filing of the Illinois return as he had in the first lawsuit.

Additionally, plaintiff alleged malpractice based on Hanson's failure to take certain deductions in the federal estate tax return (Federal return). In his complaint, plaintiff alleged that Hanson "negligently failed to take proper, allowable deductions" on the Federal return. During the administration of the estate and trust, "professional fees" of over $2 million were incurred, including legal fees and accounting fees. These professional fees were entitled to be deducted from either the Federal return or the estate or trust income tax returns. Most of the deductions

---

[2] Since the cause of action for accounting malpractice is not at issue, we will not delve into the details of the allegations, other than to note that the claim was based on the same transactions as the claims of legal malpractice.

7

were taken on the trust's income tax returns, even though the marginal tax rate for the Federal return was higher. Any claim for refund or for the filing of a protective claim for professional fees was required to be filed by July 11, 2005; no such claim was filed.

Plaintiff acknowledged the release, but claimed to be unaware that Hanson and EPPE had failed to take all allowable deductions on the Federal return. Neither Hanson nor EPPE informed plaintiff of the failure to take deductions on the Federal return, and if the failure had been disclosed, plaintiff would not have agreed to settle his claims for $35,000. Plaintiff first became aware of the alleged negligence on September 8, 2006, when he was informed by Martin. Accordingly, no claim involving the Federal return was alleged in the first malpractice suit.

On March 15, 2007, EPPE filed a motion to dismiss count I of plaintiff's complaint pursuant to section 2-619(a)(6) of the Code. In support, EPPE argued that the release entered into by the parties was valid and binding and precluded plaintiff's suit. EPPE also noted that on November 16, 2005, prior to entering into the settlement agreement, Hanson's attorney sent a letter to Shapiro, plaintiff's attorney, indicating that she was enclosing a number of documents that had been requested by Shapiro; among the documents listed was the Federal return. On March 26, 2007, Hanson joined in EPPE's motion and adopted its arguments, stating that plaintiff simply desired a "second bite of the apple." Hanson also claimed that the lawsuit was barred by *res judicata*.

In response, plaintiff argued that the release did not bar the claims alleged in the suit because they were unknown to plaintiff at the time of the release. Plaintiff also claimed that even if the release was valid, it was not enforceable because Hanson and EPPE had duties as fiduciaries

to disclose the fact that they had not taken the allowable deductions. Plaintiff further denied that the claims should be barred by *res judicata*, saying that it would be fundamentally unfair to apply it in this situation because had he known of the Federal return, plaintiff would not have entered into the settlement agreement and the court would not have approved it.

A hearing on the motion was held on July 11, 2007. During the hearing, the court noted:

"I'm stuck with this Illinois Supreme Court case filed which I wish they would give more specific guidelines on how you're going to make a determination of whether or not a claim is within the contemplation of the parties at the time they executed the settlement agreement."

The court found that there was an issue of fact as to whether plaintiff was aware of the issues surrounding the Federal return at the time of the settlement agreement. The court also noted:

"An issue of fact. But in another case I have -- and it's not a jury case -- we're having a hearing on that very issue, as to their specific knowledge regarding that because there's also an argument -- and I know there's some case law on either side of it -- that there had to be objective knowledge, knew or should have known and whether they specifically knew.

So I think even the defendant's knowledge of this issue would bear on that as well. Like I said, I wish I had better

guidance from the Appellate Court as to how -- because I -- it's a

waste to leave this until a jury trial. But doing [*sic*] through all of

this discovery, this may very well be covered by the release.

And I guess it's something that I should have taken care of

sooner rather than later actually."

The court granted the motion to dismiss in part and denied it in part; the motion was granted as to all claims in plaintiff's complaint with the exception of those claims related to deductions associated with the Federal return. On September 14, 2007, the trial court denied Hanson and EPPE's motion for rehearing, and ordered plaintiff to amend his complaint. Plaintiff amended his complaint three times, with Hanson filing motions to dismiss each amended complaint on various grounds.

On April 16, 2009, plaintiff filed his fourth amended complaint, and Hanson filed a motion to dismiss it pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2008)), while preserving his arguments from the previous motions to dismiss.[3] On September 25, 2009, the trial court entered an order granting EPPE's motion to dismiss, subject to reinstatement, and denied Hanson's motion to dismiss.

On October 7, 2009, Hanson filed a motion for a permissive interlocutory appeal pursuant to Rule 308. The trial court granted Hanson's motion on November 10, 2009, finding that there were questions of law as to which there was substantial ground for difference of opinion and that

---

[3] EPPE also filed a motion to dismiss the fourth amended complaint, but that motion is not in the record.

No. 1-09-3205

an immediate appeal could materially advance the ultimate termination of the litigation. The court

then certified two questions for appeal:

> "Can a party who has released all claims that were brought
>
> or could have been brought in a prior suit maintain a subsequent
>
> suit based on a claim that could have been brought in the prior suit
>
> based on his assertion that he did not contemplate the claim at the
>
> time of the release?
>
> Is plaintiff's present action barred by *res judicata* based
>
> upon the dismissal of his prior action with prejudice?"

We initially denied Hanson's petition for leave to appeal, and on March 24, 2010, the

Illinois Supreme Court entered a supervisory order directing us to grant leave to appeal and to

answer the certified questions.

## ANALYSIS

Illinois Supreme Court Rule 308 provides a remedy of permissive appeal from

interlocutory orders where the trial court has deemed that they involve a question of law as to

which there is substantial ground for difference of opinion and where an immediate appeal from

the order may materially advance the ultimate termination of the litigation. We apply a *de novo*

standard of review to legal questions presented in an interlocutory appeal brought pursuant to

Supreme Court Rule 308. *Simmons v. Homatas*, 236 Ill. 2d 459, 466 (2010).

### *Release*

In the case at bar, the first question certified by the trial court concerns the interpretation

11

of the release contained in the parties' settlement agreement. A release " 'is the abandonment of a claim to the person against whom the claim exists.' " *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 21 (2003) (quoting *Hurd v. Wildman, Harrold, Allen & Dixon*, 303 Ill. App. 3d 84, 88 (1999)); *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 614 (2007). It is a contract and is therefore governed by contract law. *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447 (1991) (citing *Polo National Bank v. Lester*, 183 Ill. App. 3d 411, 414 (1989)). Where a contract is clear and explicit, a court must enforce it as written, and the meaning of the contract, as well as the intention of the parties, must be gathered from the document without the assistance of extrinsic aids. *Rakowski v. Lucente*, 104 Ill. 2d 317 (1984); *Fuller Family*, 371 Ill. App. 3d at 614; *Shultz v. Delta-Rail Corp.*, 156 Ill. App. 3d 1, 10 (1987). However, a release will not be construed to include claims that were not within the contemplation of the parties. *Carlile v. Snap-On Tools*, 271 Ill. App. 3d 833, 838 (1995) (citing *Carona v. Illinois Central Gulf R.R. Co.*, 203 Ill. App. 3d 947, 951 (1990)). " '[N]o form of words, no matter how all encompassing, will foreclose scrutiny of a release [citation] or prevent a reviewing court from inquiring into surrounding circumstances to ascertain whether it was fairly made and accurately reflected the intention of the parties.' " *Carlile*, 271 Ill. App. 3d at 839 (quoting *Ainsworth Corp. v. Cenco, Inc.*, 107 Ill. App. 3d 435, 439 (1982)).

The release at issue here provided that plaintiff:

> "do[es] hereby remise, release and forever discharge Per K.
>
> Hanson, individually, The Firm of Per K. Hanson Associated, P.C.,
>
> Erickson, Papanek, Peterson, Erickson, successor to Erickson,

Papanek, Hanson, Peterson, *** from any and all manner of actions, *** whatsoever, known or unknown, in law or in equity, or for any other reason whatsoever, from the beginning of the world to the date hereof, and including, but not limited to, *any and all claims and matters that have been asserted in the Litigation or that could have been asserted in the Litigation, and any and all claims arising out of or in any way related to the obligations, duties and management or administration of the Estate and/or Trust*, Hanson and EPPE's fees and expenses, and the rendering of professional services by Hanson, The Firm of Per K. Hanson Associated, P.C., and EPPE and any and all claims which were asserted or could have been asserted in the Litigation in law or equity ***." (Emphasis added.)

The fundamental area of disagreement between the parties is whether the second lawsuit, based on the Federal return, was within the contemplation of the parties at the time they signed the release. To determine the answer, we must determine the scope of the release. If a release is a general release and the releasing party was unaware of other claims, the release is restricted to the specific claims contained in the release agreement. *Whitlock*, 144 Ill. 2d at 447. Where both parties were aware of an additional claim at the time of signing the release, the general release will be interpreted to release that claim as well. *Whitlock*, 144 Ill. 2d at 447. However, if the release is specific, courts have been willing to bar additional claims falling within the scope of the release

13

that do not explicitly appear in the release.  See, *e.g.*, *Gavery v. McMahon & Elliott*, 283 Ill. App. 3d 484, 488-89 (1996); *Chubb v. Amax Coal Co.*, 125 Ill. App. 3d 682, 686 (1984).

In the case at bar, the release as a whole is general, because it releases "any and all manner of actions, *** whatsoever, known or unknown, in law or in equity, or for any other reason whatsoever, from the beginning of the world to the date hereof."  This type of language has been held to constitute a general release.  See *Whitlock*, 144 Ill. 2d at 447; *Thornwood*, 344 Ill. App. 3d at 22; *Carona*, 203 Ill. App. 3d at 951.  Under the express language of the general release, the claim involving the Federal return would be barred even if unknown, because the language provides a release of claims "known or unknown."

However, plaintiff stated in his complaint and affidavit that he was unaware of other claims at the time of signing the release.  Accordingly, we limit the release to its specific terms, namely, "any and all claims and matters that have been asserted in the [probate court] Litigation or that could have been asserted in the Litigation, and any and all claims arising out of or in any way related to the obligations, duties and management or administration of the Estate and/or Trust."

The claims relating to the Federal return are claims that could have been raised in the first lawsuit, and are also "related to the obligations, duties and management or administration" of the estate and trust.  Accordingly, they fall within the specific language of the release.  Thus, the question we must answer is whether unknown claims that fall within the specific terms of a general release are barred by the release.

The first case we must consider is the Illinois Supreme Court's *Whitlock* case, which was

14

heavily relied on by the trial court and plaintiff. In *Whitlock*, the defendant children purchased a farm using financing obtained from the plaintiff bank; one of the conditions of the bank's agreement to provide financing was that the children's parents pledged their farm as security. *Whitlock*, 144 Ill. 2d at 443. As a result, two loans were arranged: loan No. 1 was secured by the parents' farm and was signed by both the parents and the children, and loan No. 2 was secured by the farm that the children were purchasing and was signed by the children alone. *Whitlock*, 144 Ill. 2d at 443-44. The children defaulted on loan No. 2, and in order to avoid foreclosure, the children transferred the land to the bank in exchange for a release agreement providing in part:

> " 'Bank *** does hereby remise, release and forever discharge
>
> Borrower, and each of them if more than one, of and from all
>
> manner of actions, *** whatsoever, at law or in equity, and
>
> particularly without limiting the generality of the foregoing all
>
> claims relating to the mortgage loan transaction aforesaid and the
>
> conveyance of title hereunder, which either party *** ever had,
>
> now have or may have in the future, for, upon or by reason of any
>
> matter, cause or thing, whatsoever.' " (Emphasis omitted.)
>
> *Whitlock*, 144 Ill. 2d at 444-45.

The bank attempted to foreclose on the parents' farm, and in an affirmative defense, the defendants argued that the release acted as a bar to the foreclosure action. *Whitlock*, 144 Ill. 2d at 445.

The bank claimed that the release was intended to apply solely to loan No. 2, pointing to

15

numerous references to loan No. 2 contained in the release. *Whitlock*, 144 Ill. 2d at 445-46. The defendants argued that the general release language should apply to both loans. *Whitlock*, 144 Ill. 2d at 446. The court found that the claim was general and ambiguous on its face. *Whitlock*, 144 Ill. 2d at 447. The court noted that the release stated that the bank released the borrowers from all actions and claims, but *particularly* those relating to loan No. 2. *Whitlock*, 144 Ill. 2d at 448. Both parties were aware at the time of claims that might arise from loan No. 1, but the court found that it was not clear on the face of the release whether the parties intended to release both loans or limit the release to loan No. 2. *Whitlock*, 144 Ill. 2d at 448. Thus, the intent of the parties needed to be determined by examining extrinsic evidence. *Whitlock*, 144 Ill. 2d at 448.

*Whitlock* does not answer the question before us. While the case is instructive for the rule that a general release is inapplicable to an unknown claim, the claims in *Whitlock* were known to both parties at the time they entered into the release. See *Whitlock*, 144 Ill. 2d at 448. Additionally, the relevant language in this case is the specific language contained in the release, not the release's general language.

Plaintiff relies on *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68 (1992), to support his argument that the release does not apply to the claim involving the Federal return. However, that case is inapposite. In *Myers*, the plaintiff and the defendant settled a lawsuit in which plaintiff asked for an accounting to enforce compensation provisions of an employment agreement; plaintiff executed a release providing that the plaintiff

> " 'does *** remise, release, and forever discharge [defendant] of
>
> and from all manner of actions, *** whatsoever, in law or in equity,

and particularly, without limiting the generality of the foregoing, from all claims which were or might have been asserted in that certain action entitled *Stephen A. Myers, v. Health Specialists, S.C.*, Case No. 79 CH 621, or in any manner arising from or related to the subject matter of such action or, arising from any employment agreement between the [parties], which [plaintiff] now has against [defendant] or ever had, *** by reason of any matter, cause, or thing, whatsoever, on or at any time prior to the date of these Presents.' " *Myers*, 225 Ill. App. 3d at 70.

Several years later, the plaintiff filed a declaratory judgment action, in part asserting that the defendant had breached the employment agreement by failing to maintain insurance for acts performed during the plaintiff's employment. *Myers*, 225 Ill. App. 3d at 70-71. The defendant argued that the claim was barred by the release, since the claim arose from the insurance provision of the employment agreement and the plaintiff had released " 'all claims *** arising from any employment agreement between [the parties here].' " *Myers*, 225 Ill. App. 3d at 73.

The court, relying on *Whitlock*, held that the claim was not barred by the release. The court first noted that the release's own terms excluded the plaintiff's claim, because the release only applied to claims that the plaintiff had on or before the date of the release, and the plaintiff's claim arose at a later time. *Myers*, 225 Ill. App. 3d at 74-75. However, more importantly, the court also found that the release was a general one. *Myers*, 225 Ill. App. 3d at 75. The court acknowledged that the " 'particularly' " provision at first seemed to specify a certain set of claims,

but that upon closer inspection, the release of defendant from " '*all* claims \*\*\* in *any* manner \*\*\* arising from *any* employment agreement' " (emphasis in original) was sufficiently broad to transform the " 'particularly' " provision itself into a general release. *Myers*, 225 Ill. App. 3d at 75. Accordingly, the court held that the new claim, of which the plaintiff had no knowledge at the time of entering into the release, was not barred by the release. *Myers*, 225 Ill. App. 3d at 75.

In the case at bar, the specific portion of the release is not nearly as broad as in *Myers*. In fact, the clause at issue here is very similar to the first part of *Myers*' " 'particularly' " clause, which released all claims which were brought or could have been brought in the prior litigation. See *Myers*, 225 Ill. App. 3d at 70. However, the *Myers* court did not hold that part of the clause to have been sufficiently broad to constitute a general release but focused its analysis solely on the second portion of the clause. See *Myers*, 225 Ill. Ap. 3d at 75. Thus, *Myers* does not speak to whether the parties must contemplate every situation to which a specific release may apply.

Plaintiff also places great reliance on *Thornwood*, which we also find instructive. *Thornwood* involved two releases. The first was a release between the plaintiff and the defendant law firm, which provided that the law firm was relieved

> " 'from any liability from any and all claims, \*\*\* or liabilities of any
> nature whatsoever in law of [*sic*] in equity, whether known or
> hereinafter discovered, that arose out of events that have occurred
> from the beginning of time until the date hereof.' " *Thornwood*,
> 344 Ill. App. 3d at 20.

We found that this release contained "sweeping language" that rendered the release general.

18

*Thornwood*, 344 Ill. App. 3d at 22. Since the plaintiff's claims of aiding and abetting breach of fiduciary duty and fraud were unknown to him at the time he executed the release, we held that the release did not bar the claims. *Thornwood*, 344 Ill. App. 3d at 22. Additionally, we noted that the claims may have been contemplated by the law firm, but that "knowledge by one party, where the other party lacks knowledge, does not bring the claim within the 'contemplation of the parties.' " *Thornwood*, 344 Ill. App. 3d at 22 (quoting *Todd v. Mitchell*, 168 Ill. 199, 204 (1897)).

However, when examining the second release, we found it much less general than the first. The second release, between the plaintiff and his former business partner, limited the subject matter to which the release applied and identified several types of claims that were explicitly released. *Thornwood*, 344 Ill. App. 3d at 23. We found that, since the claims of aiding and abetting breach of fiduciary duty and fraud were based on alleged breaches of fiduciary duty, which was explicitly released, the claims were barred by the release. *Thornwood*, 344 Ill. App. 3d at 23.

Plaintiff points to the analysis in *Thornwood* concerning fraud, in which we noted that on a defendant's motion to dismiss, if the release is valid on its face, the burden shifts to the plaintiff to allege facts invalidating the agreement, such as the presence of fraud, duress, or mutual mistake. *Thornwood*, 344 Ill. App. 3d at 23. However, that is not the issue before us today. In *Thornwood*, the allegations of the complaint indicated that the releases may have been obtained by fraud. *Thornwood*, 344 Ill. App. 3d at 26. Here, the complaint does not allege fraud. While plaintiff argues in his brief that defendant was in a fiduciary relationship with plaintiff and

breached his fiduciary duty by failing to disclose the allegedly improper deductions, we are limited to the issues raised in the certified questions and will not go beyond those questions to consider plaintiff's claim. See *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 153 (2007) ("An interlocutory appeal pursuant to Supreme Court Rule 308 is ordinarily limited to the question certified by the circuit court ***.").

We do find *Thornwood* instructive, however, because in it, we found that the claims of aiding and abetting breach of fiduciary were barred by the second release despite our earlier statement that those specific claims were not contemplated by the parties. See *Thornwood*, 344 Ill. App. 3d at 22-23. We reached this result "because the claims contemplated by the parties included partnership-related claims." *Thornwood*, 344 Ill. App. 3d at 23. Our analysis in *Thornwood* would likewise apply in the case at bar. Here, although the parties may not have contemplated claims specifically based on the Federal return, the terms of the release indicate that they contemplated (1) there were matters that were not asserted in the first lawsuit that could have been and (2) claims related to the "obligations, duties and management or administration of the Estate and/or Trust." Both of these categories include the claims based on the Federal return, and accordingly, those claims are barred.

Our conclusion is bolstered by the analysis in *Gavery*, which is heavily relied on by Hanson. In that case, the plaintiff entered into an asset purchase agreement and a noncompetition agreement to sell his medical practice, and was represented in those negotiations by the defendant law firm. *Gavery*, 283 Ill. App. 3d at 485. The plaintiff was later involved in a dispute with the purchaser over whether credits were to be applied against the purchase price, and the plaintiff was

represented by a different law firm in relation to that dispute. *Gavery*, 283 Ill. App. 3d at 485. The defendant refused to cooperate with the new law firm unless the plaintiff released it from any claims he might have against it; the new law firm advised the plaintiff that he might have " 'certain claims' " against the defendant related to the credits, and the plaintiff executed the release. *Gavery*, 283 Ill. App. 3d at 486. Some time after executing the release, the purchaser filed an action for declaratory relief against the plaintiff in relation to the noncompetition agreement, and the plaintiff had to settle the claim. *Gavery*, 283 Ill. App. 3d at 486. The plaintiff then filed suit against the defendant and his new law firm for breach of contract and negligence, alleging that they failed to advise him about the validity of the noncompetition agreement. *Gavery*, 283 Ill. App. 3d at 486.

The court held that the release barred the plaintiff's claims against the defendant. *Gavery*, 283 Ill. App. 3d at 487. The court noted that the release agreement was "very specific and unambiguous," pointing to recitals that stated that the plaintiff was advised that he may have claims against the defendant and the language of the release, which provided that the plaintiff released all claims " 'as a result of the sale of the assets and goodwill of [his medical practice], including but without limitation, any injury or damage sustained by [plaintiff] by virtue of entering into the Asset Purchase Agreement and/or the Non-Competition Agreement.' " (Emphasis omitted.) *Gavery*, 283 Ill. App. 3d at 487. The court distinguished *Myers* and *Whitlock*, because they were based on either ambiguous or general releases. *Gavery*, 283 Ill. App. 3d at 487-88. The court also rejected the argument that the specific claims were not within the contemplation of the parties, finding that extrinsic evidence would not be considered because the release was

21

unambiguous and the claims fell within the scope of the specific release. *Gavery*, 283 Ill. App. 3d at 488-89.

Similarly, in the case at bar, the release is unambiguous and specifically releases claims that could have been previously raised in the first lawsuit and claims that relate to the administration of the estate. Accordingly, we need not consider plaintiff's extrinsic evidence indicating that he did not specifically contemplate claims relating to the Federal return because the claim falls within the scope of the claims specifically released.

During oral argument, plaintiff cited to the recent case of *Janowiak v. Tiesi*, 402 Ill. App. 3d 997 (2010), arguing that it was analogous to the case at bar. However, we find the case inapposite. In *Janowiak*, the release at issue purported to release the defendant from "any and all liability relating to his acts or failure to act as trustee." (Internal quotation marks omitted.) *Janowiak*, 402 Ill. App. 3d at 1016. The court found the language of the release to be general because it did not specify which claims were to be released. *Janowiak*, 402 Ill. App. 3d at 1016. Additionally, the court found that even if the release was a specific release, the claims of breach of fiduciary duty and fraud did not arise from the plaintiff's actions as trustee and there was an issue of fact since the plaintiff alleged that it was not his intent to release those claims. *Janowiak*, 402 Ill. App. 3d at 1016-17.

In the case at bar, however, the release is more specific than that in *Janowiak*, referring to "any and all claims and matters that have been asserted in the Litigation or that could have been asserted in the Litigation, and any and all claims arising out of or in any way related to the obligations, duties and management or administration of the Estate and/or Trust." This language

is sufficiently specific to identify the claims that are being released. Moreover, the claim concerning the Federal return falls within the specific language of the release. Accordingly, we answer the first certified question in the negative.

*Res Judicata*

The second question certified by the trial court asks whether plaintiff's second lawsuit is barred by *res judicata* based on the previous dismissal of the first lawsuit with prejudice. The trial court in the first lawsuit entered an order stating:

> "The Complaint and all claims and causes of action between the Estate, Trust, Hanson and EPPE as more fully described in the Settlement Agreement and Mutual General Release are hereby dismissed with prejudice, pursuant to the Settlement Agreement and Mutual General Release, and this dismissal shall be a bar to any claim or cause of action asserted or which could have been asserted with respect to the performance of professional services by Hanson and EPPE to the Estate and Trust, with each party is to bear his or her costs in the litigation."

" 'The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action.' " *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008) (quoting *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996)). *Res judicata* bars relitigation of issues that were actually decided in the first lawsuit, as well as issues that could

23

have been decided in that suit. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). Three requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits has been reached by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions. *Hudson*, 228 Ill. 2d at 467 (citing *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 73-74 (1994)).

Here, there is no dispute as to the third requirement: the parties are identical in both actions. However, although not argued by either party, we cannot find that the first requirement is satisfied because the first lawsuit was resolved through a settlement agreement. We have noted in prior cases that there is a split of authority on the question of whether a dismissal with prejudice pursuant to a settlement agreement operates as a final judgment on the merits. See *Jackson v. Callan Publishing, Inc.*, 356 Ill. App. 3d 326, 340 (2005) (noting split of authority). However, we agree with the cases that find that the dismissal does not operate as a final judgment on the merits for purposes of *res judicata*, because "an agreed order is not a judicial determination of the parties' rights, but rather is a recordation of the agreement between the parties." *Kandalepas v. Economou*, 269 Ill. App. 3d 245, 252 (1994). Since there was no actual decision on the merits, we cannot find that the first requirement is satisfied and thus claim would not be barred by *res judicata*.

Additionally, plaintiff argues that Hanson cannot establish the second requirement, that the issues relating to the Federal return were decided in the first lawsuit, because the claim was undisclosed by Hanson and unknown by plaintiff. In order to determine whether there is an identity of cause of action, we apply the "transactional test." *River Park*, 184 Ill. 2d at 311.

"[P]ursuant to the transactional analysis, separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park*, 184 Ill. 2d at 311.

In the case at bar, the allegations concerning the Federal return arise from the same group of operative facts as was at issue in the first lawsuit. Both lawsuits concerned the administration of the decedent's estate and trust, and both lawsuits involved the tax aspects of the estate administration. Thus, the claims are considered the same cause of action and the second requirement is satisfied.

Even if all three requirements were satisfied, plaintiff argues that *res judicata* should not apply because it would be fundamentally unfair to apply it in this case. See *Weisman v. Schiller, Ducanto & Fleck*, 314 Ill. App. 3d 577, 581 (2000) ("the doctrine of *res judicata* need not be applied where fundamental fairness so requires"). In support, plaintiff claims that "[t]he evidence shows that Hanson concealed his failure to take allowable federal deductions on the Federal Estate Tax Return and induced Plaintiff to agree to accept an inadequate settlement." Plaintiff also argues that he would not have agreed to the settlement agreement had he known of the Federal return, nor would the trial court have approved it. The problem with plaintiff's argument is that there is no allegation in the complaint that Hanson concealed any information or that he did so to induce plaintiff to accept an inadequate settlement. The allegations in the complaint simply state that Hanson took deductions on one tax form instead of another. There is no allegation about the reason for Hanson's actions, or even that Hanson was aware of the failure at the time of the first lawsuit. Thus, we cannot accept plaintiff's argument that it would be inequitable to apply

*res judicata* to the case at bar. However, since there was no final judgment on the merits, we find that *res judicata* does not apply and answer the second certified question in the negative.

CONCLUSION

First, the release barred plaintiff's claim under the second lawsuit. Second, *res judicata* did not apply to bar the claim in the second lawsuit. Therefore, we answer both certified questions in the negative.

Certified questions answered.