In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2979

SAMS HOTEL GROUP, LLC, doing business as
HOMEWOOD SUITES HOTEL,

*Plaintiff-Appellant*,

*v.*

ENVIRONS, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:09-cv-00930-TWP-TAB—**Tanya Walton Pratt**, *Judge.*

ARGUED MARCH 1, 2013—DECIDED MAY 31, 2013

Before ROVNER, WILLIAMS, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff SAMS Hotel Group, LLC appeals the district court's determination that a limitation of liability clause in its contract with defendant Environs, Inc. for a building design is enforceable against SAMS in this case alleging that Environs breached the contract by providing poor quality services that led to the demolition of the building. Pursuant to that clause, SAMS's damages were limited to just $70,000

of a claimed loss of $4.2 million after a judgment in its favor on its breach of contract claim. We affirm.

We begin with the facts of the parties' transaction and then proceed to the course of the lawsuit. SAMS contracted with Environs, an architectural firm, to provide architectural services for the construction of a six-story Homewood Suites hotel in Fort Wayne, Indiana. Environs was to be paid a flat fee of $70,000 for its work. The contract contained the following clause limiting Environs's liability for a breach of contract:

> The Owner [SAMS] agrees that to the fullest extent permitted by law, Environs Architects/Planners, Inc. total liability to the Owner shall not exceed the amount of the total lump sum fee due to negligence, errors, omissions, strict liability, breach of contract or breach of warranty.

The contract was signed on March 1, 2007, and the design and construction process began soon after that. The hotel structure was nearly complete in the spring of 2008 when serious structural defects were discovered. The county building department soon condemned the structure. Attempts to remedy the structural flaws failed, and the hotel was demolished in 2009 without ever opening. SAMS estimated its loss at more than $4.2 million.

SAMS filed this diversity-jurisdiction suit against Environs for breach of contract and negligence. The theory underlying both claims was that Environs provided a defective design and negligently performed its contractual obligations. While SAMS's suit was pending, however, the Indiana Supreme Court held in *Indianapolis-Marion County*

*Public Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722 (Ind. 2010) ("*IMCPL*"), that the "economic loss rule" applies to construction contracts under Indiana law. Under that rule, a party to a contract cannot be liable under a tort theory for any purely economic loss caused by the party's negligent performance of the contract, absent any personal injury or damage to other property. See *id*. at 726-27. The district court applied *IMCPL* and the economic loss rule to grant summary judgment in favor of Environs on SAMS's negligence claim. *SAMS Hotel Group, LLC v. Environs, Inc.*, 2011 WL 809048, at *2 (S.D. Ind. March 2, 2011). In the same ruling, the court also held that the limitation of liability clause was enforceable so that SAMS's potential recovery on its surviving breach of contract claim would be limited to $70,000. See *id*. at *2-3.

SAMS's breach of contract claim was then tried to the court. The district court found that Environs was liable for breach in several ways, the details of which are not relevant to this appeal. Without deciding the total amount of damages SAMS incurred as a result of Environs's breaches, the court limited SAMS's recovery to $70,000 pursuant to the limitation of liability clause. *Id.* at *14. Environs does not contest the district court's findings of breach, but SAMS appeals the district court's determination that the limitation of liability provision is enforceable. The interpretation of this written contract is a question of law that we review *de novo*. See *Ace American Ins. Co. v. RC2 Corp.*, 600 F.3d 763, 766 (7th Cir. 2010). Indiana law applies, and our task is to apply Indiana law as we believe the Indiana Supreme

Court would. See *Clark v. State Farm Mutual Auto. Ins. Co.*, 473 F.3d 708, 712 (7th Cir. 2007).

The broad language of the limitation of liability provision plainly applies to SAMS's claims for breach of contract. SAMS argues, however, that the limitation of liability provision in the parties' professional services contract is not enforceable against SAMS, regardless of what SAMS and Environs knowingly and willingly agreed. SAMS relies on the fact that the provision did not refer specifically to a limit on damages for Environs's own negligence. According to SAMS, the provision covered only Environs's liability for negligence of third parties. We must therefore predict how the Indiana Supreme Court would answer the following question: Is a limitation of liability clause in a professional services contract that generally refers to liability for "negligence" and breach of contract, and that was freely bargained by two sophisticated commercial entities, enforceable in favor of a breaching party even though the clause does not specifically refer to that party's own negligence? We predict that the Indiana Supreme Court would say yes, so we affirm the district court's judgment.

The Indiana courts have long recognized and respected the freedom of parties to enter into contracts and have presumed that those contracts represent the freely bargained agreements of the parties. See *Haegert v. University of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012), citing *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind. 1995); see also *Trimble v. Ameritech Publishing, Inc.*, 700 N.E.2d 1128, 1129 (Ind. 1998). "It is in the best interest of

the public not to restrict unnecessarily persons' freedom of contract." *Trimble*, 700 N.E.2d at 1129, quoting *Fresh Cut, Inc.*, 650 N.E.2d at 1129. This is our baseline.

The contract between SAMS and Environs was not a consumer contract or a contract of adhesion. The undisputed facts show that the negotiating parties were two sophisticated business entities of equal bargaining power who were aware of the risks involved in designing and building a hotel. They had done an earlier hotel construction project with a contract that contained a limitation of liability provision similar to this one.[1] They were in the best position to allocate the relevant risks between them, and it is undisputed that they signed the contract with knowledge and understanding of each of its terms. SAMS does not argue that the limitation of liability provision of its agreement with Environs contravened a statute, tended to injure the public, was contrary to Indiana public policy, or was

---

[1] Ash Lakhany was the president and managing member of SAMS. He negotiated and signed the contract with Environs on behalf of SAMS. In 2000, another entity in which Lakhany was a member, Super Host Hospitality, contracted with Environs to design a three-story Hilton Garden Inn hotel in Ft. Wayne, Indiana. That contract also contained a limited liability provision that stated:

> The Owner agrees that the total liability of the Architect shall not exceed the total compensation received for claims arising from negligence, errors, omissions, and breach of contract or breach of warranty.

That hotel was constructed successfully.

ambiguous in any way. Nor does SAMS argue that the broad language of the provision would not apply to its claims in this case. SAMS argues only that it should be excused from the terms of its bargain, even though the meaning of the language is clear and unambiguous, because the language did not refer explicitly to Environs's own negligence.

In making this argument, SAMS relies primarily not on cases applying limitation of liability clauses but on cases with contract clauses that would completely indemnify or exculpate a defendant for its own negligence. In such provisions, the key contractual language must "'*clearly* and *unequivocally* manifest a commitment by [the plaintiff], knowingly and willing[ly] made, to pay for damages occasioned by [the defendant's] negligence.'" *Marsh v. Dixon*, 707 N.E.2d 998, 1000 (Ind. App. 1999) (holding that exculpatory clause did not refer specifically to defendant's own negligence and thus did not bar plaintiff's negligence claim for a broken ankle suffered in defendant's wind tunnel ride), quoting *Indiana State Highway Comm'n v. Thomas,* 346 N.E.2d 252, 260 (Ind. App. 1976) (emphasis in original) (contractor not required to indemnify state for injuries to contractor's employee because indemnity provision did not refer specifically to state's own negligence); see also *Avant v. Community Hosp.*, 826 N.E.2d 7, 10-12 (Ind. App. 2005) (exculpatory clause referred explicitly and specifically to gym's negligence and was enforceable against injured gym visitor).

These Indiana cases require that an indemnification or exculpatory clause, to be effective, must refer explicitly

to the indemnified or exculpated party's own negligence. See, *e.g.*, *NES Rentals Holdings, Inc. v. Steine Cold Storage, Inc.*, ___ F.3d ___, ___, 2013 WL 1395700, at *7 (7th Cir. April 8, 2013) (applying Indiana law, indemnification provision did not show that defendant knowingly and willingly accepted burden of indemnifying plaintiff for plaintiff's own negligence where provision did not refer explicitly to plaintiff's own negligence); *Wabash County Young Men's Christian Ass'n v. Thompson*, 975 N.E.2d 362, 366-67 (Ind. App. 2012) (because plaintiff's injury arose not from defendant's negligence but from risks inherent in participation in organized sport, release that did not refer specifically to defendant's negligence was enforceable), citing *Marsh*, 707 N.E.2d at 1000. The Indiana courts, however, have not applied this strict rule for indemnification and exculpatory clauses to a case like this one, in which two commercial entities, well aware of the risks involved, freely and knowingly negotiated a limitation of liability clause so as to allocate those risks in advance.

Though the Indiana courts have made specificity a requirement in indemnification and exculpatory clauses, they have not spoken so clearly regarding limitation of liability clauses in sophisticated commercial contracts. SAMS argues that the differences among these provisions are not significant for these purposes, so that the specificity requirement should apply to the limitation of liability provision here as well. We are not persuaded.

These different types of clauses serve different purposes, and Indiana case law does not indicate that they

should be analyzed alike. Limitation of liability clauses, such as the clause in the SAMS-Environs contract, do not operate as insurance the way that indemnification clauses do. They also do not entirely prevent one party to the contract from bringing a claim against the other, as exculpatory clauses do. Limitation of liability clauses serve to establish a contractual ceiling on the amount of damages to be awarded if a plaintiff prevails in later litigation between the contracting parties. We agree with SAMS that when a clause limits a party's liability to only nominal damages, a limitation of liability clause can be as harsh as a full exculpatory clause would be. This would be particularly true if the plaintiff were an unsophisticated individual or if the plaintiff had been bound to the provision through a contract of adhesion. But SAMS and Environs were sophisticated commercial entities that knew the risks and freely bargained for the terms of the contract, including the limitation of liability clause. SAMS did not unknowingly agree to the limitation of liability clause or assume these risks. To the extent it suffered a harsh result, it cannot blame the general nature of limitation of liability clauses.

Further, we are unaware of any authoritative Indiana appellate case that has clearly extended the rule of specificity to limitation of liability provisions. The cases SAMS cites in support of strict application of the specificity standard to limitation of liability clauses do not persuade us that existing Indiana law has extended the specificity requirement that far. SAMS relies primarily on *Carr v. Hoosier Photo Supplies, Inc.*, 422 N.E.2d 1272 (Ind. App. 1981), a consumer case in which the court of

appeals found that, like an indemnification clause, a limitation of liability clause must be "clear and unequivocal" to be enforceable — although the court did not state that in the context of limitation of liability provisions, "clear and unequivocal" requires a specific reference to a party's negligence. *Id.* at 1277, citing *Thomas*, 346 N.E.2d at 260. But regardless of what that appellate opinion said or did not say, it was vacated on transfer to the Indiana Supreme Court. See *Carr v. Hoosier Photo Supplies, Inc.*, 441 N.E.2d 450 (Ind. 1982). Under Indiana law it therefore serves as no authority whatsoever. See Ind. Rule App. P. 58.[2]

SAMS also relies on *General Bargain Center v. American Alarm Co.*, 430 N.E.2d 407, 411 (Ind. App. 1982), in which the appeals court said that "the designation ['liquidated damages' clause, 'exculpatory' clause, or 'limitation of liability' clause] given by the parties to the limitation specified in the contract is not conclusive," and held that absent certain exceptions, each type of provision can be enforceable under Indiana law. But, contrary to SAMS's understanding of that case, the court did not find that exculpatory clauses and limitation of liability clauses are always analyzed under the same standard. The court simply concluded that the clauses functioned similarly

---

[2] On transfer, the Indiana Supreme Court held that the limitation of liability clause at issue was unambiguous and that the plaintiff had understood the clause when he accepted the contract. The court therefore reversed without addressing whether the strict specificity standard applied. *Carr*, 441 N.E.2d at 455-56.

under the facts of that case. It held only that, absent evidence that the contract was unconscionable or against public policy, or that the agreement was not entered into knowingly and willingly, each of these types of clauses is generally enforceable. See *id.* at 411-12.

SAMS's strongest authority is *State Group Industrial (USA) Ltd. v. Murphy & Assocs. Indus. Servs., Inc.*, 878 N.E.2d 475, 480-81 (Ind. App. 2007). In that case, the court applied the specificity requirement in analyzing a limitation of liability clause's applicability to a party's criminal and fraudulent conduct, finding that the clause was not specific enough to bar liability for such unforeseeable acts. But it did not hold definitively that the specificity requirement applied to limitation of liability clauses purporting to limit damages in the event of a negligent breach of contract — after all, intentional misconduct is a circumstance very different from foreseeable failures to meet contractual standards for performance. This cryptic signal from the appellate court does not convince us that the Indiana Supreme Court would probably adopt such a broad holding. The suggestion that Indiana law does not distinguish between these clauses for *some* purposes offers only meager support for SAMS's contention that Indiana law sees no distinction between these types of clauses for *all* purposes, particularly where reaching that result would require us to rewrite the parties' freely negotiated bargain. Without more specific guidance from the Indiana courts, we are not persuaded we should read such a requirement into Indiana law to benefit SAMS, a sophisticated and experienced commercial entity that

understood the risks involved in the design and construction of a hotel and freely negotiated the limitation of liability clause in its contract with Environs.

Also, although the requirement that indemnification or exculpation for a party's own negligence must be set forth in express terms is well established, we are not convinced that the Indiana Supreme Court would extend this requirement to claims for breach of contract, even if the underlying conduct could also be called negligence. The Indiana Court of Appeals found in *Indiana Dep't of Transp. v. Shelly & Sands, Inc.*, 756 N.E.2d 1063, 1072 (Ind. App. 2001), that even if an exculpatory clause would not be sufficiently specific to absolve the defendant of its own negligence, the plaintiff's argument that the exculpatory clause was similarly unenforceable against its breach of contract claim was "misplaced." "The [plaintiff's] claim is for breach of contract, not negligence. While the language in the exculpatory clause may not be specific enough to bar a claim of negligence if the [plaintiff] had brought such a claim, that is not a question that we must resolve." *Id*. The court then examined the language of the exculpatory clause and held that it was sufficient to protect the defendant from liability for the plaintiff's breach of contract claim. See *id*. at 1072-73. Other Indiana appellate cases have recognized in dicta that a contractual clause that is not sufficiently specific to exculpate a defendant on a negligence claim may still be effective for other claims. See *Marsh,* 707 N.E.2d at 1001 ("While this exculpatory clause *may act to bar some types of liability*, it cannot act to bar liability arising from

[defendant's] own negligence.") (emphasis added), citing *Powell v. American Health Fitness Ctr. of Fort Wayne, Inc.*, 694 N.E.2d 757, 761-72 (Ind. App. 1998) (exculpatory clause void only "to the extent" that it purported to release defendant from liability caused by defendant's own negligence).

Turning back to the parties' actual agreement here, we note that the library case, *IMCPL*, involved strikingly similar facts, although not this precise issue. IMCPL hired a firm to serve as the architect for the renovation and expansion of its main library. The architect then hired several subcontractors to perform architectural and engineering services. Construction began, but several construction and design defects were discovered that ultimately caused IMCPL to sustain damages of $40 to $50 million. *IMCPL*, 929 N.E.2d at 725. IMCPL sued the general contractor and several subcontractors alleging in relevant part that they had negligently performed engineering, administrative, and design work that they were contractually obligated to perform. The defendants moved for partial summary judgment, arguing that IMCPL's negligence claims were barred by the "economic loss rule." *Id*. at 726. The Indiana Supreme Court agreed, ultimately finding that the economic loss rule barred IMCPL's negligence claims. *Id.* at 742.

But in a passage that is critical here, the court drew a clear distinction between claims for breach of contract and claims for negligence that arise from a contractual duty resulting in purely economic loss. This careful distinction would be erased if SAMS were to prevail in

the case before us on what was, for these parties, a drafting technicality. Like SAMS, IMCPL "looked to a series of contracts to establish the relative expectations of the parties." *Id*. at 730. The court recognized that in situations in which the parties' relationship is defined by a contract, "the resolution of liability for purely economic loss caused by negligence is more appropriately determined by commercial rather than tort law." *Id*. at 729. And "when it comes to claims for pure economic loss, the participants in a major construction project define for themselves their respective risks, duties, and remedies in the network or chain of contracts governing the project." *Id.* at 740. Once its negligence claim was dismissed, SAMS's only claim was for breach of contract. If SAMS could prevail on its argument that the limitation of liability clause in the parties' contract should be jettisoned because it does not meet the specificity standard required to limit negligence claims by contractual terms, that result would permit an end-run around Indiana's economic loss rule and SAMS's own contract with Environs.

"[T]he general rule of freedom of contract includes the freedom to make a bad bargain." *Indiana Bell Tel. Co. v. Mygrant*, 471 N.E.2d 660, 664 (Ind. 1984) (internal quotation omitted). Without any indication in the Indiana case law that the Indiana Supreme Court would extend the specificity rule to a limitation of liability clause that was freely and knowingly negotiated by two sophisticated commercial entities in a dispute in which the underlying cause of action is for breach of contract and not

negligence, we conclude that the district court properly held SAMS to the terms of its contract. The judgment of the district court is AFFIRMED.