**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 24, 2020[*]
Decided February 25, 2020

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 19-2594

| | |
|---|---|
| AMIT PATEL, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | No. 16-cv-10497 |
| CBRE, INC., | Charles R. Norgle, Sr., |
| *Defendant-Appellee*. | *Judge*. |

## O R D E R

Amit Patel, the sole shareholder of a dissolved Illinois corporation, settled a breach-of-contract lawsuit against his company's former landlord, 55 East Monroe Investors IV, LLC (operated by Glenstar, a management company, which we need not refer to separately again). Shortly after the settlement, Patel, as the assignee of his company's rights, sued CBRE, Inc., the landlord's leasing agent, alleging that it

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

tortiously interfered with his lease by inducing the landlord to breach it. The district court entered summary judgment in favor of CBRE. Because Patel's claim against CBRE was released by the settlement agreement, we affirm the judgment.

In 2010, Patel leased a retail space to operate a coffee shop. CBRE negotiated the lease for the landlord. Within a year, Patel sought a sublettor. As was his right under the lease, he proposed several potential candidates for the landlord's approval. The landlord, however, rejected them. Around this time, CBRE began to market the premises to find a new tenant. CBRE received a proposal that was more valuable to the landlord than Patel's lease and forwarded the details to the landlord. The landlord continued to reject Patel's proposed sublettors, so Patel eventually surrendered the space, and the landlord re-let the space.

Patel sued the landlord in state court, claiming breach of contract and fraudulent inducement for refusing to allow him to sublet the premises. The landlord filed counterclaims, contending that Patel breached the lease and failed to pay rent. The parties eventually settled. The settlement agreement includes the following release:

> The Parties hereby unconditionally release and forever discharge each other as well as their past, present and future directors, shareholders, officers, employees, attorneys, consultants, agents, administrators, representatives, customers, and insurers, and any parent, subsidiary or affiliated entity, and all persons acting by, through, under or in concert with them … from and against any and all claims … based on or arising out of the Settled Claims ….

A few months after signing the settlement agreement, Patel sued CBRE in federal court (invoking jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332). He alleged that CBRE tortiously interfered with his lease by inducing the landlord to breach it. The district court entered judgment in favor of CBRE, concluding that CBRE was as an agent or representative of the landlord and thus included in the release in the settlement agreement. Even without the release, the court continued, Patel's tortious interference claim failed on the merits because CBRE, as an agent of the landlord, was conditionally privileged to interfere with the landlord's lease.

On appeal, Patel contends that the release provision of the settlement agreement is ambiguous and that extrinsic evidence clarifies that he and the landlord did not intend to release any claims against CBRE. We review the district court's interpretation

of the contract de novo. *SAMS Hotel Grp., LLC v. Environs, Inc.*, 716 F.3d 432, 434 (7th Cir. 2013). A release of legal claims is governed by contract law—here, the parties agree, the law of Illinois. *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 792 (7th Cir. 2014). When a written agreement is clear and explicit, a court must enforce the agreement as written. *Rakowski v. Lucente*, 472 N.E.2d 791, 794 (Ill. 1984). If the agreement is ambiguous, the court must determine the parties' intent with extrinsic evidence. *Farm Credit Bank v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991). A contract is ambiguous if it can be understood in more than one sense. *Id.*

Patel first argues that the release in the settlement agreement is ambiguous because the claims it releases are unidentifiable. But the agreement releases only claims "based on or arising out of the Settled Claims." And the parties to the agreement defined the "Settled Claims" as "all currently-existing claims against each other, known or unknown, including but not limited to the Claims [defined in Recital F], and also any claims that were or could have been asserted in this Litigation." Thus, the release identifies the claims it pertains to: any that are based on or arise from claims that were or could have been brought in the litigation between Patel and the landlord over the broken lease.

Patel's suggestion that the release had to refer expressly to a tortious interference claim is incorrect: that level of specificity is not required. *See Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 763–64 (Ill. App. Ct. 2003) (release of "claims related to" breach of fiduciary duty applied to claims of fraud and aiding and abetting breach of fiduciary duty); *Gavery v. McMahon & Elliott*, 670 N.E.2d 822, 825–26 (Ill. App. Ct. 1996) (release of claims relating to violation of non-competition agreement applied to subsequent claim of failure to advise about validity of agreement). Patel's claim against CBRE arises directly from the landlord's alleged breach of the lease: that breach is a crucial element of the tortious interference claim. *See 1550 MP Rd. LLC v. Teamsters Local Union No. 700*, 91 N.E.3d 444, 466 (Ill. App. Ct. 2017) (overruled on other grounds). Thus, Patel's claim comfortably lands in the scope of those covered by the release. *See, e.g., Goodman v. Hanson*, 945 N.E.2d 1255, 1268 (Ill. App. Ct. 2011) (plaintiff's subsequent malpractice action barred by settlement that released claims relating to administration of estate); *Thornwood*, 799 N.E.2d at 763–64.

The remaining question, then, is whether the release extends to CBRE. Patel contends that the settlement agreement released only claims between him and the landlord because they are the only parties to the agreement. But a release does not need to specifically name a tortfeasor for that tortfeasor to be discharged. *Polsky v. BDO*

*Seidman*, 688 N.E.2d 364, 370 (Ill. App. Ct. 1997); *see also Farmers Auto. Ins. Ass'n v. Wroblewski*, 887 N.E.2d 916, 924 (Ill. App. Ct. 2008). Rather, "the designation of a class of persons in a release can satisfy the … requirement of specific identification." *Polsky*, 688 N.E.2d at 370; *see also Cummings v. Beaton & Assocs., Inc.*, 618 N.E.2d 292, 322–24 (Ill. App. Ct. 1992). Here, the agreement released classes of people, including the landlord's "employees, attorneys, consultants, agents, administrators, [and] representatives," from the covered claims. CBRE was the landlord's retail broker from the time Patel and the landlord (represented by CBRE) negotiated the lease through the lease being broken. Based on the plain language of the release, therefore, CBRE falls within a class of persons covered—if not as "agent" or "representative," then at least as a person "acting by, through, under or in concert with" the landlord. *See Wroblewski*, 887 N.E.2d at 924 ("[T]he terms 'agents' and 'employees' are classes that sufficiently identify Drolet because she is a member of those classes."); *Cummings*, 618 N.E.2d at 324 (While the … defendants were not parties to the … settlement agreement and release, their general existence and role … was known and … intended to be included in the release under the 'agent' rubric.").

Because we agree with the district court that the settlement agreement released Patel's tortious interference claim against CBRE, we do not address its alternative holding on the merits of Patel's claim.

AFFIRMED